BRIAN COLLINS *v.* CITY OF MILFORD ET AL.
(5679)

DUPONT, C. J., BORDEN and FOTI, Js.

Argued March 1—decision released June 28, 1988

*Douglas L. Drayton,* with whom, on the brief, was *Anne Kelly,* for the appellants (defendants).

*Gerald F. Stevens,* for the appellee (plaintiff).

FOTI, J. This is an appeal by the defendants from the decision of the workers' compensation review division sustaining the decision of the workers' compensation commissioner finding that the injuries suffered by the plaintiff were compensable under General Statutes § 7-314a.[1] The sole issue on appeal is whether the review division was correct in concluding that the plaintiff was "engaged in fire duties"; General Statutes § 7-314;[2] at the time he was injured. We find error in part.

The following facts are relevant to this appeal. The claimant, Brian Collins, filed a claim for compensation

[1] General Statutes § 7-314a provides in pertinent part: "(a) Active members of volunteer fire departments shall be construed to be employees of the municipality for the benefit of which volunteer fire services are rendered while in training or engaged in volunteer fire duty and shall be subject to the jurisdiction of the workers' compensation commission and shall be compensated in accordance with the provisions of chapter 568 for death, disability or injury incurred while in training for or engaged in volunteer fire duty."

[2] "[General Statutes] Sec. 7-314. DEFINITIONS. EXEMPTION FROM PUBLIC RECORDS AND MEETINGS LAW. (a) Wherever used in this section and sections 7-314a and 7-322a, the word 'municipality' includes each town, consolidated town and city, consolidated town and borough, city, borough, school district, fire district, fire and sewer district, sewer district, lighting district, improvement association or any other municipal corporation or taxing district, upon which is placed the duty of, or which has itself assumed the duty of, protecting its inhabitants from loss by fire; the term "fire duties" includes duties performed while at fires, while answering alarms of fire, while directly returning from fires, while at fire drills or parades, while going directly to or returning directly from fire drills or parades, while at tests or trials of any apparatus or equipment normally used by the fire department, while going directly to or returning directly from such tests or trials, while instructing or being instructed in fire duties, while answering or returning from ambulance calls where the ambulance service is part of the fire service, while answering or returning from fire department emergency calls and any other duty ordered to be performed by a superior or commanding officer in the fire department; the term 'active member of a volunteer fire company' includes all active members of said fire company, fire patrol or fire and police patrol company, whether paid or not paid for their services, except firemen who, because of contract of employment, come under the Workers' Compensation Act."

under chapter 568 of the General Statutes for an injury which he suffered on September 12, 1981, while he was a volunteer fireman and member of engine company no. 5 of the city of Milford (city), one of six such companies serving that city. On that date, his company took part in a parade which concluded at a city park where a muster was planned. The claimant's company had voted to participate in this muster at a regularly scheduled monthly meeting. The other five volunteer fire companies also participated in the parade and the muster, which consisted of competition among the various volunteer fire companies, the display of antique fire engines and the sale of food and beverages. At approximately 3 p.m., the claimant was asked by Lieutenant William Soda of engine company no. 1 if he would assist other members of that company in loading an antique fire engine on a trailer and assist in returning it to the company headquarters. The trailer was owned by engine company no. 1 and the car towing it was owned and operated by Lieutenant Soda. The claimant rode in the trailer in order to keep the antique fire engine secure. While returning to engine company no. 1 headquarters, the claimant fell from the trailer and fractured his left ankle. He was subsequently hospitalized, and remained out of work until March 22, 1982.

On October 2, 1981, Collins filed a claim for workers' compensation benefits which the city disputed on the ground that the "[e]mployee was not injured as a result of fire fighting activities." A formal hearing was held and on November 23, 1982, Commissioner Rhoda Loeb found that the claimant was engaged in fire duties within the meaning of General Statutes § 7-314 when he was injured. The commissioner determined that the claimant was "on the direct geographical route back to Station 7 of engine company no. 1 when the accident occurred meeting the requirements of § 7-314, for this section includes fire duties as directly returning

from a parade." The commissioner further found that the requirements of § 7-322a were met in that the claimant was injured while rendering assistance to another volunteer fire company engaged in "fire duties."

The defendants argue that the commissioner erred in finding that the fire engine being returned was "apparatus or equipment" within the meaning of § 7-314. We do not agree. Parades have been specifically named as functions for which volunteer firemen may receive workers' compensation under § 7-314a. Because equipment or apparatus other than active fire trucks is often included in parades, it is therefore a reasonable interpretation of the statute that antique equipment is covered by § 7-314. We note that the claimant's conduct, helping to return the antique fire engine, on the date of his injury is within the purview of General Statutes § 7-322a[3] as he was an active member of a volunteer fire company, whose services were accepted by an officer in charge of another company.

The defendants next claim that the commissioner erred in finding that the claimant was engaged in fire duties at the time of his injury. The term "fire duties" is defined in § 7-314 to include: duties while at fires, answering or returning directly from fires, participation in fire drills or parades, or going to and returning directly from fires, drills or parades. For purposes of the term "fire duties," the statute makes no distinction between "fires" and "parades." We conclude that the compensation review division was correct in sustaining the finding of the commissioner that "parades"

[3] General Statutes § 7-322a provides: "Any active member of a volunteer fire company which is actively engaged in fire duties, and whose services are accepted by such officer or person, shall be entitled to receive all benefits payable under the provisions of sections 7-314 and 7-314a. Such payments shall be made by the municipality in which the fire company of which such a fireman is a member is located."

are "fire duties," within the meaning of the statute. The commissioner's factual findings, however, were insufficient to support the review division's sustaining of the commissioner's conclusion that the claimant was returning directly from the parade at the time he was injured, thus making his injury compensable under § 7-314a.

We conclude that the record is inadequate for a determination that the claimant was returning *directly* from a parade at the time he was injured. The commissioner found that the claimant was returning "directly" from fire duties when he fell off the trailer and was injured. In upholding this finding by the commissioner, the review division rejected the town's argument that "directly" should be interpreted temporally rather than spacially or geometrically. The review division concluded: "We hold rather to the latter meaning of the adverb as expressed in the Euclidian axiom that 'a straight line is the shortest distance between two points.'"

We reject the conclusion of the review division that "directly" as it is used in § 7-314 is limited to spacial considerations. Directly has been variously defined as: "in a direct way, without anything intervening"; Black's Law Dictionary (5th Ed.); "without a moment's delay, at once, immediately, in a little while; shortly"; Webster, Third New International Dictionary; "in a straight line or course; without curving, swerving, or deviation"; Ballentine's Law Dictionary (3d Ed.). Thus, there are circumstances under which a claimant could traverse a direct geographical route but would engage in conduct before or during the sojourn which would take his conduct out of several of these definitions. By contrast, a claimant may follow a circuitous geographical route and, under the particular circumstances, still be found to have traveled directly.

In determining whether a particular claimant was, in fact, returning "directly" from "fire duty," the commissioner must make factual determinations regarding the intervening time, the nature of the activities of the claimant before commencement of his return and the nature of the activities of the claimant during the actual return. These determinations must be coupled with a consideration of the geographical route followed. All of these factors must be considered in deciding whether the claimant returned directly.

We believe that this fact-bound determination must be made on a case by case basis. There is no simple geometric formula which can be the sole basis for determining whether a claimant is traveling directly to or returning directly from fire duties for which workers' compensation may be provided in the event a volunteer fireman is injured. Rather, the commissioner must engage in a thorough analysis of both intervening temporal events and the geographic route followed before making the factual finding that the claimant's conduct comports with the requirements of §§ 7-314 and 7-314a.

In this case, the commissioner must determine whether the muster was an integral part of the parade bringing it within the purview of § 7-314a. If, however, the commissioner finds that the muster was not part of the parade, then the commissioner must determine whether the muster was an intervening event which prevented the claimant's return from being direct as that term is used by § 7-314. The commissioner must also determine whether the claimant engaged in any conduct, before or during the transport of the antique fire engine, which would constitute a deviation from a direct return to the firehouse.

There is error, the decision of the compensation review division confirming the award is set aside and

the matter is remanded for a new hearing limited to the issue of whether the claimant was returning directly to the firehouse at the time he was injured.

In this opinion the other judges concurred.