## MICHELE TRYON *v.* TOWN OF NORTH BRANFORD ET AL.
### (AC 19226)

Schaller, Pellegrino and Dupont, Js.

Argued March 28—officially released July 11, 2000

*Stephen M. Reck*, with whom was *Michael W. Malchik*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom were *Melinda A. Powell* and, on the brief, *Daniel C. DeMerchant*, for the appellees (named defendant et al.).

*R. Jack Lucas*, with whom, on the brief, was *Joseph B. Curran*, for the appellees (defendants 100th Anniversary Committee et al.).

*William J. Melley*, with whom, on the brief, was *William B. Wynne*, for the appellee (defendant Rush Turner III).

*Opinion*

DUPONT, J. The plaintiff, Michele Tryon, appeals from the trial court's judgment granting the defendants'[1] motions for summary judgment in this personal injury action in which the plaintiff was bitten by a dog while in the staging area of a firefighters' parade.[2] On appeal, the plaintiff claims that the trial court improperly concluded that (1) the plaintiff did not qualify for an exception to the doctrine of governmental immunity as an identifiable person subject to imminent harm and (2) the doctrine of governmental immunity precluded the plaintiff's claims alleging strict liability pursuant to General Statutes § 22-357.[3] We affirm the judgment of the trial court in all respects except with respect to the plaintiff's first claim on appeal, as alleged in counts four and five of her amended complaint.

---

[1] The defendants are Rush Turner III (Turner); the North Branford fire department, North Branford Fire Department No. 3 and the town of North Branford (North Branford defendants); and 100th Anniversary Committee, The A.A. Young, Jr., Hose & Ladder Co. No. 1 of Jewett City, the borough of Jewett City and the town of Griswold (100th Anniversary Committee defendants). Rush Turner, Jr., is also a defendant, but because summary judgment was not granted as to him, he is not a party to this appeal.

[2] The trial court rendered a summary judgment as to ten of the eleven counts of the plaintiff's complaint. The ninth count was based on General Statutes § 22-357 and concerns Rush Turner, Jr., and Rush Turner III. Summary judgment was not granted as to Rush Turner, Jr., but was granted as to Rush Turner III.

[3] General Statutes § 22-357 provides in relevant part: "If any dog does any damage to either the body or property of any person, the owner or keeper,

The following facts are not disputed and are relevant to our resolution of this appeal. On September 17, 1995, the plaintiff, a firefighter in uniform, attended the 1995 Connecticut State Fireman's Convention Parade held in Jewett City. The defendant Rush Turner III (Turner) is a volunteer firefighter with the defendant North Branford fire department, and the owner and keeper of the dog that bit the plaintiff. Turner participated in the parade as a member of the fire department. With the permission of his supervisors, Turner brought his dog, a dalmatian, along with him to the parade.

Prior to the commencement of the parade, Turner and his dog were in the staging area for the parade, which was located on a street adjacent to the parade route. Just before the plaintiff approached the dog, one of the firefighters in the staging area waved a bagel in front of the dog. The dog attempted to jump at the bagel but was prevented from doing so because Turner had a tight grip on the dog's leash. Thereafter, according to the deposition testimony of Turner,[4] the plaintiff approached the dog, grabbed its ears, "digging her fingernails tight behind the dog's ears," and pulled and jerked the dog's face toward her own. The dog bit the plaintiff in the nose, causing the plaintiff to lose part of her nose. According to Turner, the incident happened so fast that there was nothing he could do to stop the plaintiff's actions.

In September, 1996, the plaintiff brought an action against twelve separate defendants seeking damages

or, if the owner or keeper is a minor, the parent or guardian of such minor, shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. . . ."

[4] Portions of Turner's deposition testimony were attached to the defendants' motions for summary judgment and also to the plaintiff's memoranda opposing the motions.

for her injuries.[5] The plaintiff alleged causes of action for strict liability under § 22-357, and common-law negligence and indemnification pursuant to General Statutes (Rev. to 1995) § 7-308.[6] The defendants filed three separate motions for summary judgment, all alleging that they were entitled to judgment as a matter of law on the basis of governmental immunity. The plaintiff filed memoranda in opposition to these motions and attached excerpts from the transcript of the deposition testimony of Turner. The defendants also relied on Turner's deposition testimony in support of their respective motions.[7]

The trial court, in a memorandum of decision dated December 16, 1998, granted all three motions for summary judgment[8] in favor of the defendants.[9] The trial

[5] Two of the defendants, Linda Coleman and Violet Coleman, were granted summary judgment because they were found to be neither owners nor keepers of the dog under General Statutes § 22-357.

[6] General Statutes (Rev. to 1995) § 7-308 provides in relevant part: "Each municipality of this state, notwithstanding any inconsistent provisions of law, general, special or local, or any limitation contained in the provisions of any charter, shall pay on behalf of any paid or volunteer fireman . . . all sums which such fireman becomes obligated to pay by reason of liability imposed upon such fireman by law for damages to person or property, if the fireman, at the time of the occurrence, accident, injury or damages complained of, was performing fire duties and if such occurrence, accident, injury or damage was not the result of any wilful or wanton act of such fireman in the discharge of such duties. . . . Governmental immunity shall not be a defense in any action brought under this section. . . ."

[7] Turner also attached an affidavit to his motion for summary judgment, stating that he was a volunteer firefighter for North Branford Fire Company No. 3, that on September 17, 1995, he participated in the 1995 Connecticut State Fireman's Convention Parade in his capacity as a firefighter, that he wore his uniform and that his dog was present with the express permission of his supervisors at North Branford Fire Company No. 3.

[8] After the defendants' motions for summary judgment had been granted, the plaintiff filed a motion to reargue and attached an affidavit contradicting Turner's deposition testimony. The motion was denied, and the plaintiff does not claim an abuse of discretion arising from the denial. See, e.g., *Tiber Holding Corp.* v. *Greenberg*, 36 Conn. App. 670, 671, 652 A.2d 1063 (1995).

[9] Summary judgment was not granted as to the defendant Rush Turner, Jr., as he is not a fireman or municipal employee.

court concluded that at the time of the dog bite incident, Turner was performing a governmental duty of a discretionary nature and was therefore entitled to qualified governmental immunity. The court also concluded that the plaintiff failed to prove that she qualified for an exception to this immunity, which exception permits an action where the circumstances make it apparent to municipal employees that their failure to act would likely subject an identifiable person to imminent harm. The court also concluded that § 22-357, which imposes strict liability on an "owner or keeper" of a dog who bites an individual, does not apply to a municipal employee who is immune from liability for discretionary acts performed in the course of his duties and whose conduct does not fall within any of the exceptions to governmental immunity.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. 'Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.' . . . *Tarzia* v. *Great Atlantic & Pacific Tea Co.*, 52 Conn. App. 136, 145, 727 A.2d 219 (1999).

" 'On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' . . . *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 693, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). Because

the trial court rendered judgment for the defendants as a matter of law, 'our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record.' . . . *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995). 'On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous.' *2830 Whitney Avenue Corp.* v. *Heritage Canal Development Associates, Inc.*, 33 Conn. App. 563, 567, 636 A.2d 1377 (1994)." *Kramer* v. *Petisi*, 53 Conn. App. 62, 66–67, 728 A.2d 1097, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999).

In deciding whether it is appropriate to render summary judgment, a court is not necessarily entitled to assume the truth of a defendant's declarations concerning intent or a fact known only to a defendant simply because of the absence of an affidavit contradicting the declarations. *Batick* v. *Seymour*, 186 Conn. 632, 645–46, 443 A.2d 471 (1982). Summary judgment is inappropriate where the inferences that the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. *Nolan* v. *Borkowski*, 206 Conn. 495, 505, 538 A.2d 1031 (1988). The failure to file an opposing affidavit or documentary evidence where motive, intent or subjective feelings and reactions are involved does not entitle the moving party to a favorable inference as to the truth of his affidavit or documentary evidence. Id., 504. If, however, motive, intent or subjective views are not involved, the failure to file a contradictory, competent affidavit in opposition to the motion for summary judgment could entitle the movant to a favorable inference as to the truth of the affidavit or deposition testimony. *Collum* v. *Chapin*, 40 Conn. App. 449, 450 n.2, 671 A.2d 1329 (1996).

I

The plaintiff's first claim is that the trial court improperly concluded, as a matter of law, that she failed to prove that she was an identifiable person subject to imminent harm so as to come within an exception to the doctrine of governmental immunity.

The doctrine that determines the tort liability of municipal employees is well established. " 'Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. *Evon* v. *Andrews*, [211 Conn. 501, 505, 559 A.2d 1131 (1989)]; *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 165, 544 A.2d 1185 (1988). The doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees. [A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act.' . . . *Burns* v. *Board of Education*, [228 Conn. 640, 645, 638 A.2d 1 (1994)]. '[T]he ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [where] resolution of those factual issues is properly left to the jury.' *Mulligan* v. *Rioux*, 229 Conn. 716, 736, 643 A.2d 1226 (1994)." *Purzycki* v. *Fairfield*, 244 Conn. 101, 107–108, 708 A.2d 937 (1998).

The plaintiff alleges in her complaint, and the defendants agree, that Turner was engaged in the performance of a governmental duty at the time of the dog bite incident that caused the plaintiff's injuries.[10] It is

[10] "The term 'fire duties' is defined in [General Statutes] § 7-314 to include: duties while at fires, answering or returning directly from fires, participation in fire drills or parades, or going to and returning directly from fires, drills or parades. For purposes of the term 'fire duties,' the statute makes no distinction between 'fires' and 'parades.' " *Collins* v. *Milford*, 15 Conn. App. 84, 87, 543 A.2d 291 (1988).

not clear whether the plaintiff concedes that the duty owed by Turner was discretionary, not ministerial, in nature. The plaintiff, in a footnote in her brief, appears to claim that the dog bite statute, § 22-357, involves a ministerial act because liability pursuant to the statute does not involve discretion or judgment. She makes no argument, however, that participation by Turner in the parade is a ministerial rather than a discretionary act, nor was such a claim made in the trial court. We agree with the trial court that Turner was engaged in a discretionary act and review this appeal accordingly.

In order to prevail, the plaintiff must fall within one of the recognized exceptions to a municipal employee's qualified immunity for discretionary acts. " 'Our cases recognize three such exceptions: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.' . . . *Burns* v. *Board of Education*, supra, 228 Conn. 645; *Evon* v. *Andrews*, supra, 211 Conn. 505." *Purzycki* v. *Fairfield*, supra, 244 Conn. 108.

The only exception to the qualified immunity of a municipal employee for discretionary acts that is of relevance to the present case[11] is the exception permit-

---

[11] The plaintiff does not allege in her complaint, nor did she before the trial court, that Turner's conduct involved "malice, wantonness or intent to injure."

The plaintiff's claims in her complaint are based on common-law negligence and strict liability under the dog bite statute. Section 22-357 provides for liability upon proof of violation; see *Gore* v. *People's Savings Bank*, 35 Conn. App. 126, 131, 644 A.2d 945 (1994), rev'd on other grounds, 235 Conn. 360, 665 A.2d 1341 (1995) (in cases of strict liability, defendant is liable without fault upon proof of violation of statute); and common-law negligence does not involve malice or wantonness. We limit our discussion to the

ting a tort action in circumstances where a failure to act will subject an identifiable person to imminent harm. Our Supreme Court has "construed this exception [to governmental immunity] to apply not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims." (Internal quotation marks omitted.) Id. "The 'discrete person/imminent harm' exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state." *Evon* v. *Andrews*, supra, 211 Conn. 507.

The plaintiff claims that she was within a narrowly defined class of foreseeable victims so as to come within the exception. The plaintiff claims that she was, in a literal sense, an identifiable person because Turner saw her bend down to pet the dog. Whether that is so or whether all of those watching a parade or observing the participants in the parade prior to the parade's beginning are an identifiable class of persons that are included in the exception, however, need not be decided. The plaintiff was not a member of the general public attending a parade but a firefighter in uniform in the staging area one block away from the site of the parade when the dog bit her.

The trial court held that construing the plaintiff's allegations in the light most favorable to the plaintiff, she was an "identifiable person." An individual may be "identifiable" for purposes of the exception to qualified governmental immunity if the harm occurs within a limited temporal and geographical zone, involving a temporary condition. *Purzycki* v. *Fairfield*, supra, 244 Conn. 110. Here, the harm did occur within a framework limited in duration, place and condition. We agree with

identifiable person-imminent harm exception, the only one raised by the parties before the trial court and on appeal.

the trial court that the plaintiff was an "identifiable person" within the meaning of the exception.

The court, however, also held that although the plaintiff was an identifiable person, she had failed to offer any evidence to show that she was subject to imminent harm. We must next determine, on the basis of the motions for summary judgment and the deposition testimony of Turner, whether the trial court correctly concluded that the material fact of imminent harm was not in dispute. See id., 109.

The defendants rely on *Evon* v. *Andrews*, supra, 211 Conn. 507–508, in which our Supreme Court discussed the identifiable person-imminent harm exception to the general rule of qualified governmental immunity. In that case, the plaintiffs sought damages for the wrongful death of their decedents who had been killed when fire destroyed their apartment. The plaintiffs brought an action against the city of Waterbury and various city officials, claiming that they had been negligent in failing to enforce properly various statutes, regulations and codes concerning the maintenance of rental dwellings. The site of the fire contained numerous conditions that violated state regulations and local building codes, and the plaintiffs claimed that the defendants were negligent in failing to inspect the premises properly or to remedy the deficiencies. The trial court granted the defendants' motion to strike these claims on grounds of governmental immunity and the plaintiffs appealed, claiming that they had alleged sufficient facts to qualify for the identifiable person-imminent harm exception to governmental immunity.[12]

---

[12] The complaint alleged that the municipality failed to enforce the law, which might fall within the second exception to governmental immunity, rather than the identifiable person-imminent harm exception. The court, however, discussed the case on the plaintiffs' terms, although it did "not agree with the characterization that the plaintiffs assign to these allegations." *Evon* v. *Andrews*, supra, 211 Conn. 504.

Our Supreme Court stated that "the plaintiffs' decedents were not subject to 'imminent harm.' This is clearly not the situation in which a police officer stood by and watched a public brawl that resulted in a person being shot. See *Sestito* v. *Groton*, [178 Conn. 520, 523, 423 A.2d 165 (1979)]. The present allegations do not even rise to the level of the imminence we rejected in *Shore* v. *Stonington*, [187 Conn. 147, 157, 444 A.2d 1379 (1982)], in which a police officer permitted a drunk driver to continue on his way, resulting in the death of the plaintiff's decedent. In the present instance, the fire could have occurred at any future time or not at all. We cannot accept the proposition that the plaintiffs' decedents in this case were readily identifiable victims subject to imminent harm. As we observed in *Shore* v. *Stonington*, supra, 157, '[t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society.' " *Evon* v. *Andrews*, supra, 211 Conn. 508.

The court's reasoning in *Evon* was based on the fact that the risk of fire arising from the maintenance of several dwellings implicates a wide range of factors that could occur, if at all, at some time in the future. The condition alleged was, therefore, not a situation where imminent harm, namely, harm ready to take place within the immediate future, existed. The court also noted that the possible victims of an unspecified fire that may occur at some unspecified time in the future does not provide a class of identifiable persons. We do not conclude that *Evon* is analogous to the present case, based on the facts.

In the present case, the plaintiff's amended complaint alleges that the plaintiff was an identifiable victim because Turner knew that she was petting his dog and she "was in close proximity to the dog's teeth." The trial court noted that "[o]ther than the statement that

the plaintiff was in close proximity to the dog's teeth, there is no other allegation as to the imminency of harm." The court concluded that "[t]he plaintiff has neither alleged any facts nor offered any evidence to show that [Turner] had any knowledge . . . that the plaintiff was in danger of immediate harm."[13]

---

[13] The relevant portions of the deposition testimony of Turner are as follows:

"Q. Let's turn now to the actual bite of [the plaintiff]. Tell me what happened.

"A. We were at our staging area. I had Scanner [his dog] with me. He was on his leash. The leash was wrapped around my hand—I mean, I had it wrapped around my hand real tight where he couldn't go anywhere. We were just standing there minding our own business and, at the time, some other guy from another fire department had a bagel and he was waving the bagel in the air. Scanner wanted to jump at it, but he couldn't because I had a tight grip on him. Then a female firefighter walked up, made a comment about the dog, took her hands and dug her fingernails in real tight behind his ears like this, and pulled his face up to her face like this and that's when she got bit.

"Q. Now, the person who had the bagel, was that someone who knew [the plaintiff]?

"A. Probably, because they both had the same type of uniforms on.

"Q. Did [the plaintiff] pet the dog before she—

"A. No, she didn't. She didn't put her hand out. She didn't ball her hand up in a fist to let him smell her. She just grabbed him.

\* \* \*

"Q. Did you have the leash tightly wrapped around you—

"A. Yes, I did.

"Q. Well, let me finish. Did you have the leash tightly wrapped around you when [the plaintiff] was bit?

"A. Yes, I did.

"Q. And how long is the leash?

"A. I'd have to say between six and around this long, maybe—I don't know how many feet that is. Four or five feet.

"Q. And how much of the leash is wrapped around your—

"A. All of it. I have most of it wrapped around my hand and then around my wrist.

"Q. Did [the plaintiff] talk to you before she bent down?

"A. No. She just said—she made one comment about the dog. That's all.

"Q. What did she say?

"A. She said the dog was fat.

\* \* \*

"Q. Did [the plaintiff] put out her hand so the dog could sniff her?

"A. No.

The deposition testimony of Turner can be read in either of two ways. It either shows that the plaintiff

"Q. Did [the plaintiff] bend down so the dog would come toward her?

"A. She just bent down. That's all.

"Q. Did she make any contact with the dog before she bent down?

"A. No.

"Q. And when you say she bent down, just describe that to me. How did she bend down?

"A. She just got down on both knees, put her face in front of his and yanked him by his ears.

"Q. Now, when you say she got down on both knees, did she actually kneel or was she squatting?

"A. She was kneeling.

"Q. Her knees were touching the ground?

"A. Yes.

"Q. So her face was approximately eye level with the dog?

"A. Yes.

"Q. And after she bent down, then she grabbed the dog's ears?

"A. She grabbed him by his ears, sunk her nails into his ears and just pulled the face. It was just like that, boom, boom. It happened all within a split second. There was nothing I could do.

"Q. When you say she sunk her nails, did she have long fingernails?

"A. Yes, she did. It's kind of ironic, someone having long nails being a firefighter. I'd never seen it before.

"Q. Was she trying to hurt the dog?

"[Turner's Counsel]: Objection.

"[Plaintiff's Counsel]: You can answer that.

"A. That I don't know. I don't know what her motive was.

"Q. I mean, did it look like she was trying to—

"A. It looked like she was trying to provoke the dog.

"Q. And why did it look like she was trying to provoke the dog?

"A. To be honest, common sense would tell you and people, know you, don't go grabbing a dog by the ears and putting your face to his face without balling your fist, letting him sniff you or putting your hand out and let him sniff. Everyone knows that.

"Q. When you say it looked like she was trying to provoke the dog, it looked like she was trying to provoke a response from the dog?

"A. Yes.

"Q. Some negative response?

"A. Yes.

"Q. Did you think the dog would bite her when she grabbed the dog's ears?

"A. I don't know what to think.

"Q. And can you explain that? Why didn't you know what to think?

"A. It just happened too fast. There was nothing I could do. I'm standing up and she's kneeling.

"Q. But you had the leash wrapped tightly around your arm, is that right?

"A. Yes.

was placed in imminent harm by Turner's actions or failure to act, in failing to control his dog, or that the plaintiff put herself in imminent harm by her own actions. In Turner's opinion, it was the latter.

There is a difference between the existence of a duty and a violation of that duty. The existence of the duty is a question of law whereas whether there was a breach of that duty is a question of fact. *Shore* v. *Stonington,*

"Q. And why didn't you pull the dog away when she grabbed the dog's ears?

"A. Why didn't I pull the dog away? She basically had already pulled the dog toward her. There was nothing I could do. What you're doing is, she's putting her face in front of the dog. You're cutting the dog's vision off because his vision comes like that. And he is feeling pain. He thinks he is being attacked. There was nothing I could do.

"Q. Do you think that [the plaintiff] was attacking the dog?

"A. I don't know what her motives were that day. I don't know what her motives were. I'd like to know what her motives were.

"Q. I mean, do you think she wanted to get bit?

"A. Yeah. To be honest, yes.

"Q. Now, when she bent down, did she bend down slowly?

"A. I wasn't watching her when she bent down. I just saw her when she was on her two knees and then everything happened.

"Q. Did she have her hands extended when she was bending down?

"A. Yes, she did.

"Q. Describe how she extended her arms.

"A. Okay. She was down like this, she came up, grabbing the dog like that and—boom—pulled his face into her face. I could see if you do it with a poodle, yes, but you just don't—forget it.

"Q. So she had her arms fully extended when she first touched the dog?

"A. She had her arms fully extended and she just grabbed him by the ears. She sunk her nails—because I was watching. It happened so fast. She sunk her nails and pulled and jerked on his head.

"Q. She had her arms fully extended when she first touched the dog's ears, is that right?

"A. Uh-huh, from the looks of it.

"Q. And then she pulled the dog toward her. How far was that?

"A. From here to here.

"Q. About two feet?

"A. Two, two and one-half feet maybe. I mean, I really don't know because it just happened too fast. There was nothing I could do to stop her actions.

"Q. Okay. Now, after she had pulled the dog two to two and one-half feet toward her, what happened next?

"A. He bit her."

supra, 187 Conn. 151–52. We have concluded, as a matter of law, that Turner owed a duty to the plaintiff because she was an identifiable person. Whether that duty was violated because he placed her in imminent harm is a question of fact. See *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 171. Because the question of imminent harm is a factual one; see *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 26, 664 A.2d 719 (1995); a jury or fact finder would need to assess the credibility and the weight to be given Turner's testimony.

Deposition testimony often involves opinions and calls into question the credibility of the deponent. "It is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 376, 260 A.2d 596 (1969). Although Turner submitted an affidavit, it did not address any facts relating to the issue of imminent harm. His deposition did address the issue, and for purposes of this opinion, we assume that summary judgment can, in some instances, be supported solely by deposition testimony. *Dubay* v. *Irish*, 207 Conn. 518, 534 n.9, 542 A.2d 711 (1988); *Collum* v. *Chapin*, supra, 40 Conn. App. 450 n.2. Here, however, the deposition testimony was based on the opinion of Turner as to how the accident happened, and recounts his subjective feelings and reactions. It also deals with Turner's view of the intent and motive of the plaintiff in approaching the dog. In instances where deposition testimony formed the basis for the granting of summary judgment, it should be noted that often the deposition was not the deposition of the movant for summary judgment, as is true here. *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 793, 749 A.2d 1144 (2000); *Home Ins.*

*Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 203–205, 663 A.2d 1001 (1995); *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 57 Conn. App. 41, 45, 746 A.2d 820, cert. granted on other grounds, 253 Conn. 911, 754 A.2d 161 (2000); *Pion* v. *Southern New England Telephone Co.*, 44 Conn. App. 657, 658–59, 691 A.2d 1107 (1997). Here, Turner and the other defendants who allegedly share a vicarious liability rely on Turner's own testimony to establish that no material fact is in dispute.

"It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised." *Poller* v. *Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962). "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." *Sartor* v. *Arkansas Natural Gas Corp.*, 321 U.S. 620, 624, 64 S. Ct. 724, 88 L. Ed. 967 (1944). Whether the plaintiff can prove that she was placed in imminent harm by Turner depends in part on Turner's credibility, which can be tested only by his live testimony.

Under the circumstances of this case, we do not agree with the trial court's conclusion that the plaintiff was not subject to imminent harm. The question is not whether a dog at a parade creates a condition of imminent harm per se, but whether the act or failure to act of Turner in preventing his dog from being in close proximity to the plaintiff created a situation of imminent harm to the plaintiff. Here, the harm caused was not of an unspecified type that could have occurred at any time or at any place in the future or to anyone. We hold that Turner's motion for summary judgment should not have been granted as to the plaintiff's claims of direct negligence against him as alleged in count four of her amended complaint.

In light of our conclusion that Turner might, after a trial, be found to have breached a duty to keep the plaintiff from suffering imminent harm, the claim for indemnification of the individual defendant Turner by the North Branford defendants in count five of the plaintiff's amended complaint remains viable. General Statutes § 7-308 provides for indemnification by municipalities of firemen who incur liability for damages to person or property caused in the performance of their official duties.[14] Our Supreme Court in *Wu* v. *Fairfield*, 204 Conn. 435, 438, 528 A.2d 364 (1987), decided a claim under General Statutes § 7-465, an analogous municipal indemnification statute, and held that any municipal liability must be predicated upon prior findings of individual negligence on the part of the municipal employee. See also *Altfeter* v. *Naugatuck*, 53 Conn. App. 791, 799, 732 A.2d 207 (1999) (municipality does not assume liability in first instance). This holding applies equally to a claim under § 7-308. Because the claim for indemnification against the North Branford defendants is derivative of Turner's liability, the motion for summary judgment by the North Branford defendants as to this claim should also have been denied.

The plaintiff's claims in counts three and six for indemnification pursuant to § 7-308 against the 100th Anniversary Committee defendants must fail because the plaintiff has failed to allege, or offer any proof, establishing an employment relationship between those defendants and Turner. See *Wu* v. *Fairfield*, supra, 204 Conn. 438 (holding that municipal liability must be based on prior findings of individual negligence on part of employee and municipality's employment relation-

---

[14] Several counts of the plaintiff's amended complaint refer to General Statutes § 7-465, but it is unclear whether these counts allege claims pursuant to that statute. We note that to the extent that the plaintiff alleges claims for indemnification pursuant to § 7-465, such claims necessarily fail because that statute specifically *excludes* "firemen covered under the provisions of section 7-308 . . . ."

ship with that individual). Summary judgment as to those counts was proper.

In several counts, the plaintiff alleges negligence of the North Branford defendants and the 100th Anniversary Committee defendants for their negligence in failing to instruct firemen adequately on the proper use of dogs in a parade and parade assembly area, to supervise the dog properly, to control the dog properly, to warn the plaintiff properly about the dog and to instruct the plaintiff properly about the dog. The plaintiff has not cited any statute that would abrogate the governmental immunity for common-law negligence enjoyed by these defendants; see *Williams* v. *New Haven*, 243 Conn. 763, 766–67, 707 A.2d 1251 (1998); and therefore, these claims must fail. Summary judgment therefore properly was granted as to counts seven, ten and eleven.[15]

## II

The plaintiff claims next that the trial court improperly determined that the doctrine of governmental immunity precluded her claims alleging strict liability pursuant to § 22-357. We agree with the trial court and affirm its rendition of summary judgment for the defendants as to the plaintiff's claims under § 22-357.

Section 22-357 imposes strict liability on the owner or keeper of any dog that does damage to the body or property of any person. In the present case, the parties do not dispute that Turner is the owner of the dog that bit the plaintiff. The plaintiff alleged claims for strict liability against Turner individually, the municipal defendants and for indemnification by the municipal defendants for the strict liability of Turner. The plaintiff

---

[15] The plaintiff cites General Statutes § 52-557n in her brief but did not allege this statute in her complaint or in her opposition to the defendants' motions for summary judgment. Accordingly, we do not consider it. See Practice Book § 10-3; see also *Williams* v. *New Haven*, supra, 243 Conn. 766; *Collum* v. *Chapin*, supra, 40 Conn. App. 453.

claims that because the statute imposes strict liability, governmental immunity does not apply and, therefore, summary judgment was improper as to these claims. The trial court held that because the defendants are immune from liability and because the legislature has not specifically provided that § 22-357 is an exception to the general rules of governmental immunity, the plaintiff's strict liability claims were barred. We must decide whether the doctrine of governmental immunity bars the plaintiff's claims for strict liability under § 22-357.

"A municipality itself was generally immune from liability for its tortious acts at common law . . . ." *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 165. Governmental immunity may, however, be abrogated by statute. "The state legislature possesses the authority to abrogate any governmental immunity that the common law gives to municipalities." *Ryszkiewicz* v. *New Britain*, 193 Conn. 589, 593, 479 A.2d 793 (1984). The general rule developed in the case law is that a municipality is immune from liability unless the legislature has enacted a statute abrogating that immunity. *Williams* v. *New Haven*, supra, 243 Conn. 766–67. "Statutes that abrogate or modify governmental immunity are to be strictly construed. . . . This rule of construction stems from the basic principle that when a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction." (Citations omitted; internal quotation marks omitted.) *Rawling* v. *New Haven*, 206 Conn. 100, 105, 537 A.2d 439 (1988). "The court is to go no faster and no further than the legislature has gone. . . . A legislative intention not expressed in some appropriate manner has no legal existence." (Internal quotation

marks omitted.) *Edmundson* v. *Rivera,* 169 Conn. 630, 633, 363 A.2d 1031 (1975).

"The legislature has acted to limit governmental immunity in certain circumstances. For example, in General Statutes § 13a-149, the legislature has provided for municipal liability for property damage or personal injuries caused by defective roads and bridges. The legislature also has set forth general principles of municipal liability and immunity in General Statutes § 52-557n." *Williams* v. *New Haven,* supra, 243 Conn. 767.

Section 52-557n abrogates the common-law rule of governmental immunity and sets forth the circumstances in which a municipality is liable for damages to person and property. These circumstances include the negligent acts or omissions of the political subdivision or its employees or agents, "negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit" and acts which constitute the creation or participation in the creation of a nuisance. General Statutes § 52-557n (a). The section goes on to exclude liability for acts or omissions of any employee or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct and negligent acts that involve the exercise of judgment or discretion. General Statutes § 52-557n (a). The statute further sets forth ten other circumstances in which a municipality shall not be liable for damages to person or property. General Statutes § 52-557n (b).

Section 52-557n fails to mention any exception to the rule of municipal immunity that would allow liability for injuries pursuant to § 22-357. "The legislature's intent is derived 'not in what it meant to say, but in what it did say.' *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 571, 512 A.2d 893 (1986)." *Lynn* v. *Haybuster Mfg., Inc.,*

226 Conn. 282, 290, 627 A.2d 1288 (1993). In the absence of explicit language in § 52-557n modifying the common-law rule of governmental immunity for claims of strict liability pursuant to § 22-357, the statute should not be so construed, and we decline to do so.

The plaintiff cites to no authority, and we are aware of none, to support the claim that § 22-357 was intended to abrogate the doctrine of governmental immunity. Section 22-357 creates a cause of action that did not exist at common law and, therefore, it must be strictly construed. *Murphy* v. *Buonato*, 42 Conn. App. 239, 249, 679 A.2d 411 (1996), aff'd, 241 Conn. 319, 696 A.2d 320 (1997). The purpose of § 22-357 was to "abrogate the common-law doctrine of scienter as applied to damage by dogs to persons and property, so that liability of the owner or keeper [does not depend] upon his knowledge of the dog's ferocity or mischievous propensity . . . ." (Internal quotation marks omitted.) Id., 248. The statute does not provide that governmental immunity shall not be a defense to an action brought under it.

Our Supreme Court's decision in *Squeglia* v. *Squeglia*, 234 Conn. 259, 661 A.2d 1007 (1995), is instructive in our analysis of this claim. In that case, the dispositive issue before the court was whether the doctrine of parental immunity barred an action by an unemancipated minor against his parent in which strict liability was alleged pursuant to § 22-357. The court concluded that the action was barred. Id., 260; see also *Ascuitto* v. *Farriciello*, 244 Conn. 692, 697, 711 A.2d 708 (1998).

In reaching that decision, the court in *Squeglia* explained that the purpose of the doctrine of parental immunity "is to preserve the integrity and unity of the family and to avoid unnecessarily injecting the machinery of the state into the day-to-day exercise of parental discretion. . . . There is no reason to believe that an action in strict liability would be less disruptive to these

interests than any other civil action for personal injuries brought by an unemancipated child against a parent." (Citations omitted; internal quotation marks omitted.) *Squeglia* v. *Squeglia,* supra, 234 Conn. 265–66. Accordingly, the court concluded that the plaintiff was barred by the doctrine of parental immunity from bringing an action in strict liability under § 22-357. Thus, our Supreme Court has determined that circumstances exist that may outweigh the purposes behind the imposition of strict liability under § 22-357.

One purpose of governmental immunity is to avoid injecting monetary claims of the public alleging harm arising out of the day-to-day operation of discretionary municipal functions. *Wadsworth* v. *Middletown,* 94 Conn. 435, 440, 109 A. 246 (1920); see also *Heigl* v. *Board of Education,* 218 Conn. 1, 6 n.5, 587 A.2d 423 (1991); *Burns* v. *Board of Education,* 30 Conn. App. 594, 603–604, 621 A.2d 1350 (1993), rev'd on other grounds, 228 Conn. 640, 638 A.2d 1 (1994). Without express statutory language abrogating the doctrine of governmental immunity in order to allow claims of strict liability under § 22-357, we see no reason to disturb the doctrine. Limited governmental immunity and governmental immunity rest on the principle that governmental acts should be shielded from liability except in discrete instances, whereas strict liability statutes rest on the principle that certain acts, in and of themselves, without proof of anything else, and without proof of any negligence, require liability to arise. Governmental immunity limits liability, and § 22-357 expands and extends liability. The dichotomy between these principles militates against our allowing any further intrusion into the doctrine of governmental immunity. We affirm the judgment of the trial court for the defendants as to counts one, two, three and eight, which concern the plaintiff's claims brought pursuant to § 22-357.

The judgment of the trial court granting the motions for summary judgment as to counts one, two, three, six, seven, eight, ten and eleven is affirmed. The judgment as to the claims in counts four and five is set aside and the case is remanded for further proceedings as to those counts.

In this opinion the other judges concurred.