[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS BY DEFENDANTS CONNECTICUT RESOURCE RECOVERY AUTHORITY AND METROPOLITAN DISTRICT COMMISSION
The defendants, Connecticut Resource Recovery Authority ("CRRA"), and the Metropolitan District Commission ("MDC") have moved to dismiss Counts Three, Four, Five and Six of the plaintiffs' First Amended Complaint.
Statement of Facts
The following facts are alleged in the plaintiffs' First Amended Complaint or have been provided by the defendants in accordance with Practice Book Section 10-31[1]. The defendant, CRRA, is a quasi-public agency created by the Solid Waste Management Services Act, Connecticut General Statutes §§ 22a-257, et seq., the "Act." Under the Act, CRRA is required to provide solid waste disposal services for the residents of this state in accordance with Connecticut General Statutes § 22a-228
and 22a-228-1 of the Regulations of Connecticut State Agencies. To this end the CRRA developed the Mid-Conn Project which included incorporating the landfill owned by the City of Hartford under a long-term lease with the City. Operations at the landfill are conducted by the defendant Metropolitan District Commission under contract with the CRRA.
The Hartford Landfill, as part of the Mid Conn project, provides waste disposal services to approximately 60 municipalities and towns serving nearly 1,000,000 residents of Connecticut. Its operations are closely regulated by the DEP. Pursuant to Connecticut General Statutes §22a-228, the Commissioner of Environmental Protections (the "Commissioner") has adopted regulations that establish procedures for CT Page 9730 adopting and amending the Statewide Solid Waste Management Plan. The Act requires the Commissioner to update the Plan. The newest Plan, dated December 1999, has recently gone through the notice and comment process in which all members of the public, including the plaintiffs had the opportunity to participate.
Since July 1, 1989 in order to obtain a permit to construct or expand a disposal area for ash residue of mixed municipal solid waste, a disposal facility must obtain the written determination of the Commissioner that such facility is necessary to meet the solid waste disposal needs of the state. Connecticut General Statutes § 22a-208 contains provisions for public notice, public comment and public hearings prior to approving or denying an application for a permit by a waste disposal facility. In addition, § 22a-7 gives the Commissioner the power to issue cease and desist orders if he finds that there is or is likely to be an imminent and substantial damage to the environment or to public health for matters within his jurisdiction.
Applications for expansion and/or modification of the Hartford Landfill have been made twice over the past ten years since inclusion of the landfill I the Mid-Conn project. Although one party was granted intervener status in the first application, none of the plaintiffs sought intervener status. The permit for construction and for horizontal expansion of the Hartford Landfill is dated November 8, 1996.
Another application for modification of the Hartford Landfill was filed on July 10, 2000. Notices were published in newspapers of substantial circulation and hearings were held on this application for 10 days beginning on November 28, 2000 and ending on January 5, 2001. None of the plaintiffs sought intervener status with respect to the second application. However, Steven Gorss, as president and owner of Incredible Motels, Inc., a plaintiff herein, appeared at the DEP hearing held on November 28, 2000 and made his comments concerning the permit modification.
In his final decision, the Commissioner upheld the findings of the hearing officer addressing the issues that have been raised by the plaintiffs in their Complaint, including dust control, other pollutants and odors, birds and other vectors and rejected the requests of the intervener, Survivors on Sunset, to close the landfill and to deny the proposed modification. In rendering their decisions, the hearing officer and Commissioner also considered the previous operational and compliance history of CRRA at the landfill, in accordance with Connecticut General Statutes § 22a-6 (m). The hearing officer and Commissioner also concluded that the modification of the landfill would pose no adverse health or environmental impacts. CT Page 9731
The Proposed Final Decision was issued on March 23, 2001 and by a complaint dated April 18, 2001, the plaintiffs brought this action.
Discussion of the Law and Ruling
The Connecticut Supreme Court has held that a motion to dismiss "properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . ." Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991). It may be used to contest subject matter jurisdiction which is the power of the court to hear and determine cases of the general class to which the proceeding in question belongs. Tolly v. Department of Human Resources, 225 Conn. 13, 29,621 A.2d 719 (1993) quoting Shea v. First Federal Savings Loan Assn. OfNew Haven, 184 Conn. 285, 288, 439 A.2d 997 (1981).
The Connecticut Supreme Court has reaffirmed that standing implicates subject matter jurisdiction in Connecticut Associated Builders and Contractors v. Hartford, 251 Conn. 169, 178, 740 A.2d 813 (1999). Once the question of lack of jurisdiction of a court is raised, it must be disposed of no matter in what form it is presented. . . . And the court must fully resolve it before proceeding further with the case . . .Community Collaborative of Bridgeport Inc. v. Ganim, 241 Conn. 546,698 A.2d 245 (1997). It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction . . . One cannot rightfully invoke the jurisdiction of the court unless he has . . . some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy . . .Community Collaborative of Bridgeport, Inc. v. Ganim, supra, at 552, 553.
"Standing focuses on the party seeking to be heard and not on the issues the party wants to have heard . . . The question of standing does not involve an inquiry into the merits of the case." Lowe v. Lowe,47 Conn. App. 354, 364, 704 A.2d 236 (1997). A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts.Russell v. Yale University, 54 Conn. App. 573, 737 A.2d 931 (1999).
The plaintiffs bear the burden of establishing that they have standing. Connecticut Associated Builders and Contractors v. Hartford,supra, at 821, Fink v. Golenbock, 238 Conn. 183, 199, 680 A.2d 1243
(1996). Once it determines that it lacks subject matter jurisdiction, the court is bound to dismiss the case. Jolly, Inc. v. Zoning Bd. Of Appealsof City of Bridgeport, 237 Conn. 184, 676 A.2d 831 (1996). CT Page 9732
At the oral argument on the Motion to Dismiss, counsel for the defendants conceded that the defendants' argument with respect to the Third Count which alleges nuisance, does not pertain to standing and would be more properly addressed in a motion to strike. The same is true of the defendants' arguments with respect to the governmental immunity defense to Counts Four and Five. The defendants argue that the negligence claims alleged in Counts Four and Five are barred by the doctrine of governmental immunity. Such an argument does not go to the plaintiffs' standing and is generally raised in a motion to strike or motion for summary judgment. See, i.e., Tryon v. Town of North Branford,58 Conn. App. 702, 755 A.2d 317 (2000); Bonamico v. City of Middletown,47 Conn. App. 758, 706 A.2d 1386 (1998); Sanzone v. Board of PoliceCommissioners, 219 Conn. 179, 592 A.2d 912 (1991); Evon v. Andrews,211 Conn. 501, 559 A.2d 1131 (1989).
For the reasons set forth above, the Motion to Dismiss the Third, Fourth and Fifth Counts of the Amended Complaint is denied.
The defendants seek to dismiss the Sixth Count on the grounds that the plaintiffs lack standing to sue under Connecticut General Statutes §22a-16 since the issues raised under this statute are clearly within the primary jurisdiction of the Department of Environmental Protection (hereinafter DEP) and its Commissioner under §§ 22a-1, 22a-2.
Two recent and related Connecticut Supreme Court decisions construing § 22a-16 are squarely on point. The Connecticut Supreme Court dismissed the following cases for lack of subject matter jurisdiction based on the absence of standing because of the plaintiffs' failure to exhaust administrative remedies and since primary jurisdiction was vested in the DEP. Fish Unlimited et al. v. Northeast Utilities Service Companyet al., 254 Conn. 1, 756 A.2d 262 (2000) ("Fish Unlimited I") and FishUnlimited et al v. Northeast Utilities Service Company, et al,254 Conn. 21, 755 A.2d 860 (2000) ("Fish Unlimited II").
In Fish Unlimited I, the plaintiffs filed suit in the superior court to obtain an injunction to prevent the restarting and operation of one of the Millstone Nuclear Power Generating stations after having intervened in the permit renewal application proceedings pending before the DEP, pursuant to Connecticut General Statutes § 22a-19. The plaintiffs in the Fish Unlimited I suit alleged that the once-through condenser cooler water system in place caused "unreasonable pollution, impairment and destruction of the public trust in the air, water and other natural resources of the state within the meaning of C.G.S. § 22a-16". The defendants moved to dismiss the complaint asserting that the plaintiffs had failed to exhaust their administrative remedies before the DEP and CT Page 9733 that the DEP had primary jurisdiction over the issues raised in the plaintiffs' complaint.
In evaluating the case, the Connecticut Supreme Court noted that in past permit proceedings, the DEP had reviewed the same issues of pollution that the plaintiffs raised in their lawsuit. Fish Unlimited I, at 15. In the present case, plaintiffs complain of the same odors, vectors, birds and dust which were adjudicated in both DEP permit proceedings. The Supreme Court found that although the Fish Unlimited I plaintiffs had in fact intervened in the administrative proceeding, they were not excused from the exhaustion doctrine on grounds of futility of administrative remedy because the injunctive relief they sought in superior court was available in the administrative process. In the present case, plaintiffs did not ever intervene, although some did make appearances to complain.
The Fish Unlimited I court, referring to Cannata v. Dept. ofEnvironmental Protection, 215 Conn. 616, 577 A.2d 1016 (1990), stated that an administrative remedy is futile or inadequate only if the agency is without authority to grant the relief requested. The DEP, however, had the authority to grant the relief during the permit renewal proceeding in which Fish Unlimited had intervened. The Supreme Court reviewed the provisions of the § 22a-430 and noted that before renewing the defendants' permit, the DEP must consider and evaluate the unit's operation and make a determination whether any problems warrant abatement relief. Thus the same type of adjudication had to be made at the administrative level as would be made in the trial court.
Similarly, in the instant case, the DEP took evidence and testimony, considered the operational and compliance history and made factual and legal determinations regarding the same injunctive relief which plaintiffs are now suing for in Count Six. In Fish Unlimited I, the Court also noted that § 22a-7 provides the Commissioner with broad authority to issue cease and desist orders, with which it effectively could enjoin the defendants from restarting the Millstone unit 2. The Court also noted that § 22a-430 (b) requires the DEP to provide public notice of its tentative determination regarding a permit renewal application and to provide for a period of public comment before a final determination is made on the application. The statute also provides that the Commissioner may hold a public hearing prior to approving the application; and shall hold a hearing upon receipt of a petition signed by at least 25 persons. Finally, § 22a-437 provides that any person aggrieved by a decision of the DEP to grant or deny a permit under C.G.S. § 22a-430, has the right, after a hearing, to appeal the final determination of the DEP to the superior court.
Just as in Fish Unlimited I, in the present case, §§ 22a-208a, CT Page 973422a-430, and 22a-437 provide for public notice, opportunity for hearings, and the right, after a hearing, to appeal the final determination of the DEP to the superior court. Those rights were afforded to the plaintiffs who did not chose to participate.
The plaintiffs had the opportunity to intervene under § 22a-19 in the permit proceedings which were pending from 1990 to 1996 and July 10, 2000 through June 4, 2001, but failed to do so. Steven Gorss, the president of plaintiff Incredible Motels, Inc., and Manuel Leibert, of the plaintiff, The Leibert Family Limited Partnership, appeared before the DEP to oppose the permit application, but never intervened. Both Gorss and Leibert offered comments into the record during the DEP hearings held on November 28 and 29, 2000. The other plaintiffs presumably could have attended the hearings. However, it does not appear that any of the plaintiffs even sought to intervene in the process. The plaintiffs' failure to intervene in the process and to exhaust their administrative remedies must preclude them from now being permitted to make an end run around the DEP simply because they disagreed with the Proposed Final Decision, dated March 23, 2001, which indicated that the landfill would not be shut down and that the permit modification would be granted.
It is clear that the DEP has the authority to grant all of the relief requested by the plaintiffs in Count Six. The Commissioner, who has broad powers to order the closure, modification, denial of permits, and to issue cease and desist orders, clearly found no basis to grant the very relief which plaintiffs are now requesting.
In order to distinguish themselves from the plaintiffs in FishUnlimited I the plaintiffs argue that the Commissioner has no power to award damages, and, therefore, an attempt to secure damages at the administrative level would have been futile. The flaw in the foregoing argument is that Count Six is brought pursuant to § 22a-16, which limits plaintiffs to declaratory and injunctive relief, and does not permit a suit for damages.[2]
Under the rule enunciated in Fish Unlimited I parties cannot fail to intervene in extensive administrative hearings, wait for a final administrative decision, and then circumvent the administrative proceedings by filing a separate lawsuit which seeks relief identical to that which was at issue in those proceedings. As the Court stated in FishUnlimited I, plaintiffs should not be allowed to wait until the 11th
hour to claim futility or inadequacy of administrative remedy and request a trial court to step in and issue relief that is properly within the authority and expertise of the Department of Environmental Protection.
The Fish Unlimited I Court expressed its concern that by making an end CT Page 9735 run around the DEP, the plaintiffs had deprived the DEP of the opportunity to review the matters within its responsibility and expertise, and also denied the appellate court of the benefit of the department's findings and conclusions concerning the environmental problems associated with the use of the cooling system. The same concerns apply in this case.
In Fish Unlimited I, supra, the Court was confronted by a different set of plaintiffs than those in Fish Unlimited I. These new plaintiffs also sought to enjoin the operation the Millstone Nuclear Power Generating Station. Unlike the Fish Unlimited I plaintiffs, the Fish Unlimited II
plaintiffs had not intervened in the DEP permit proceedings, choosing instead to file suit directly in the superior court under § 22a-16. Defendants again sought to dismiss on grounds of standing for failure to exhaust administrative remedies and primary jurisdiction. The Court, in concluding that plaintiffs lacked standing, examined the aggrievement requirements under the Connecticut Environmental Protection Act, Connecticut General Statutes § 22a-1 et seq. The Court noted that while a private party may seek injunctive relief in court for the protection of the public trust, the aggrievement language in the statute must be read in conjunction with the procedures already established to exercise such right. Therefore, the Court concluded that since §22a-430 and related statutes provided the DEP with the power to address the complaints of the plaintiffs, if it concluded that the discharge was creating unreasonable pollution, then the plaintiffs were required to intervene in the DEP's administrative proceeding if they were to challenge the conduct on the basis of § 22a-16.
In the present case, DEP clearly had the power, during the pendency of the permit proceedings, to address the plaintiffs' complaints. In fact, the complaints raised by plaintiffs seem identical to those raised by the interveners in the permit proceedings. The Court stated that the FishUnlimited II plaintiffs should not be permitted to use § 22a-16 as an "open sesame" to litigate environmental issues which clearly have been placed within the exclusive domain of the DEP. The same is true of the plaintiffs in this case. The plaintiffs have no standing under § 22a-16
because they have failed to exhaust their administrative remedies, and seek to circumvent the DEP for another "bite at the apple" under the environmental laws which are within the DEP's exclusive domain. Therefore, the Motion to Dismiss the Sixth Count is granted.
 By the court, Aurigemma, J.