ROBINSON, J.
**3 The principal issue in this appeal is whether the trial court properly determined that the named plaintiff, Anthony Martinez,[1] proved the imminent harm to identifiable persons exception to the defense of governmental immunity with respect to facial injuries that he sustained when other students engaged in horseplay by running with a pair of safety scissors in the auditorium of his school. The plaintiff commenced this action against the defendants, the city of New Haven (city), the Board of Education of the City of New Haven (board), and Garth Harries, the Superintendent of New Haven Public Schools,[2] seeking damages for, inter alia, their negligent supervision of **4 students *533 pursuant to General Statutes § 52-557n (a).[3] On appeal,[4] the defendants claim, inter alia, that the trial court improperly held that the plaintiff satisfied the imminent harm to identifiable persons exception to governmental immunity, which this court recently clarified in Haynes v. Middletown , 314 Conn. 303, 101 A.3d 249 (2014). The plaintiff disagrees, and also claims, as an alternative ground for affirming the judgment of the trial court, that the defendants failed to plead governmental immunity as a special defense in the operative answer. We conclude that the plaintiff has failed to prove that the defendants' conduct had subjected an identifiable person to imminent harm. We also conclude that the trial court implicitly granted the defendants' request to amend their answer to plead governmental immunity as a special defense. Accordingly, we reverse in part the judgment of the trial court.
The record reveals the following facts, as found by the trial court, and procedural history relevant to our resolution of this appeal. On March 19, 2013, the plaintiff, who was eleven years old, attended the Engineering Science University Magnet School (school) in New Haven. Upon his arrival at the school that day, the **5 plaintiff went to the auditorium to eat breakfast and wait for classes to start. At that time, a teacher, David Scott Stewart, was present in the auditorium because the principal had assigned him to supervise student behavior. There were between seventy and seventy-five students in the auditorium that morning. While there, the plaintiff observed two female students running around the auditorium chasing after one of the plaintiff's friends. Stewart did not see the students running because he was talking to other students at the time. One of the female students had safety scissors in her hand as she ran. As that female student approached the plaintiff, the scissors fell to the ground. The plaintiff and the other female student bent down to retrieve the scissors and, as that female student lifted the open scissors from the ground, she accidentally cut the plaintiff on the left side of his face.
The plaintiff's laceration began to bleed, so he went to the bathroom with his friend to tend to the injury. Other students advised another teacher, Karissa Stolzman, of the incident. Stolzman went to the bathroom and gave the plaintiff paper towels to care for the cut and then took him to the main office. Stolzman then reported the incident to the principal and filed an incident report. The school informed the plaintiff's parents of the incident and called an ambulance to transport him to a hospital emergency room for treatment.
The plaintiff subsequently commenced this action against the defendants, seeking *534 monetary damages for his injuries. In the operative complaint, the plaintiff alleged that the defendants had failed to supervise the students in the auditorium properly. The plaintiff further alleged that the defendants failed to inspect the premises properly to ascertain the presence of dangerous objects, and, as such, they failed to remove the dangerous object that caused his injuries. The plaintiff also alleged that the defendants and their agents, servants **6 or employees were negligent, and that the action was being brought pursuant to § 52-557n. The defendants filed their first answer on July 29, 2015, which denied the plaintiff's allegations of negligence. On September 11, 2015, the defendants filed a request for leave to amend their answer to include, inter alia, the special defense of governmental immunity. The trial court never explicitly ruled on that motion for leave to amend the answer.
The matter was tried to the court, which found in favor of the plaintiff on counts one and two of the complaint. Specifically, the trial court concluded that the plaintiff satisfied the imminent harm to identifiable persons exception to governmental immunity under the standard articulated in Haynes v. Middletown , supra, 314 Conn. at 303, 101 A.3d 249. The trial court rendered judgment on counts one and two of the complaint awarding the plaintiff past economic damages of $2814.19, future economic damages of $3000, and noneconomic damages of $35,000. The trial court rendered judgment against the plaintiff on the remaining three counts of the complaint. See footnote 5 of this opinion. This appeal followed. See footnote 6 of this opinion.
On appeal, the defendants claim, inter alia, that the trial court improperly concluded that the plaintiff was an identifiable person subject to imminent harm. The plaintiff disagrees and also posits, as an alternative ground for affirmance, that the defendants failed to plead the special defense of governmental immunity in the operative answer.[5] We address these issues in turn.
**7 I
We first address the question of whether the trial court properly determined that the plaintiff met his burden of proving the imminent harm to identifiable persons exception to governmental immunity. Specifically, the defendants contend that, because the trial court did not identify how the harm was imminent, the plaintiff could not be found to be an identifiable person. Additionally, the defendants argue that the trial court did not identify the dangerous condition or explain how that dangerous condition was apparent to Stewart. Finally, the defendants contend that the trial court's reliance on whether the harm was foreseeable is improper because this court rejected that standard in *535 Haynes v. Middletown , supra, 314 Conn. at 303, 101 A.3d 249.[6]
In response, the plaintiff contends that the trial court properly concluded that he was a member of an identifiable class of victims as a student at school during school hours. Moreover, the plaintiff further contends that the dangerous condition was students running with scissors and that it was, or should have been, apparent to Stewart that the plaintiff was in danger of imminent harm. To this end, the plaintiff argues that Haynes did not reject the foreseeability standard; rather, it rejected the notion that foreseeability was limited only to temporal and geographical considerations.
**8 Our analysis begins with a review of the law concerning governmental immunity, including the imminent harm to identifiable persons exception. "[ Section] 52-557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages.... One such circumstance is a negligent act or omission of a municipal officer acting within the scope of his or her employment or official duties.... [Section] 52-557n (a) (2) (B), however, explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Citation omitted; footnote omitted; internal quotation marks omitted.) Edgerton v. Clinton , 311 Conn. 217, 229, 86 A.3d 437 (2014).
"This court has recognized an exception to discretionary act immunity that allows for liability when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm .... This identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm.... All three must be proven in order for the exception to apply." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., at 230-31, 86 A.3d 437. "[T]he ultimate determination of whether [governmental] immunity applies is ordinarily a question of law for the court ... [unless] there are unresolved factual issues ... properly left to the jury." (Internal quotation marks omitted.) Strycharz v. Cady , 323 Conn. 548, 574, 148 A.3d 1011 (2016).
We note at the outset that this court has held that public schoolchildren are "an identifiable class of beneficiaries"
**9 of a school system's duty of care for purposes of the imminent harm to identifiable persons exception. Burns v. Board of Education , 228 Conn. 640, 649, 638 A.2d 1 (1994), overruled on other grounds by Haynes v. Middletown , supra, 314 Conn. at 303, 101 A.3d 249. Indeed, "[t]he only identifiable class of foreseeable victims that we have recognized ... is that of schoolchildren attending public schools during school hours ...." (Internal quotation marks omitted.) Grady v. Somers , 294 Conn. 324, 352, 984 A.2d 684 (2009). Thus, given that the plaintiff was a public school student at school during school hours, he was an identifiable person for purposes of the imminent harm to identifiable persons *536 exception.[7] Accordingly, our focus in this appeal is on whether the trial court properly concluded that the defendants' acts or omissions subjected the plaintiff to imminent harm.
Recently, in Haynes v. Middletown , supra, 314 Conn. at 322-23, 101 A.3d 249, we clarified the imminent harm prong of the exception, holding that "the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm."[8] Applying that standard **10 to the facts in Haynes , we held that, because a jury reasonably could infer that school officials knew both that a locker had been broken for seven months and that horseplay was an ongoing problem in the locker room, a jury reasonably could have inferred "that the dangerous condition was apparent to school officials." Id., at 325, 101 A.3d 249.
Our next occasion to apply the imminence standard clarified in Haynes was in Strycharz v. Cady , supra, 323 Conn. at 548, 148 A.3d 1011. In Strycharz , this court held that a high school student, who was struck by a vehicle at the intersection of the school's driveway, failed to satisfy the imminent harm prong of the exception. Id., at 550-51, 588, 148 A.3d 1011. This court explained that the plaintiff did not prove it was apparent to the municipal defendants that this type of harm was imminent because there was no evidence from which a jury could conclude that the school was aware that students were crossing the intersection in violation of school policy. Id. Moreover, the question of whether the defendants could have prevented the plaintiff from leaving school property, while relevant to whether the defendants had breached a ministerial duty, was "irrelevant to the issue of whether it was apparent to them that students were, in fact, leaving school property, which is what the plaintiff must demonstrate to establish ... the identifiable person-imminent harm exception to governmental immunity." (Emphasis in original.) Id., at 590, 148 A.3d 1011. Significantly, this court explained that, even if the exact number of students who were crossing the street was known, "there [was] nothing in the record to indicate that the defendants would have seen them doing it." Id., at 589, 148 A.3d 1011. Thus, this court concluded that a reasonable juror could not find that the defendants would have been aware of the problem. Id., at 589-90, 148 A.3d 1011.[9]
**11 *537 Turning to the record in the present case, we conclude that the plaintiff failed to satisfy the imminent harm prong of the exception because he failed to prove that it was apparent to the defendants that the claimed dangerous condition, namely, students running with safety scissors,[10] was so likely to cause harm that a clear and unequivocal duty to act immediately was created. First, there is no evidence that possessing safety scissors in the auditorium violated any school policy. On the contrary, Stolzman testified that there was no prohibition on students having these safety scissors at school. Additionally, Stewart testified that he had never experienced any behavioral problems with any of the students involved. There is also no evidence that any **12 similar incident had occurred in the past that would have alerted the defendants that additional safety procedures were needed in the auditorium. In fact, Stewart never previously had experienced problems caused by any dangerous student behavior in the auditorium, students running with scissors or otherwise. Moreover, Stewart saw neither the students running nor the safety scissors. Unlike the broken locker and student horseplay in the locker room in Haynes , which the school had been aware was a problem since the beginning of the school year; Haynes v. Middletown , supra, 314 Conn. at 325, 101 A.3d 249 ; the defendants had not experienced any problems with student behavior in the auditorium. Thus, the defendants had no reasonable way to anticipate that a student would be cut in the course of attempting to pick up safety scissors in the auditorium at the same time as another student. Similar to the defendants in Strycharz v. Cady , supra, 323 Conn. at 548, 148 A.3d 1011, it was not apparent to the defendants that any harm was imminent.[11] Accordingly, we conclude *538 that the trial court improperly determined that the plaintiff satisfied the imminent harm to identifiable persons exception to governmental immunity.
II
We now turn to the plaintiff's alternative ground for affirmance, namely, that the defendants failed to plead governmental immunity as a special defense in their operative answer and, as such, this is simply a negligence **13 case. In response, the defendants contend that the plaintiff failed to raise this issue distinctly before the trial court, and, thus, the trial court was "under no obligation to decide the question." Practice Book § 5-2. Additionally, the defendants argue that the plaintiff did not adequately brief this issue on appeal because he failed to cite to any legal authority in support of his position. We conclude that the trial court implicitly granted the defendants' request for permission to amend their answer to plead governmental immunity as a defense, and that the plaintiff failed to show that the trial court abused its discretion by allowing that amendment to the pleadings.
The record reveals the following additional relevant facts and procedural history. In response to the plaintiff's complaint, the defendants filed their first answer on July 29, 2015. That answer denied the plaintiff's allegations of negligence but failed to raise any special defenses. Thereafter, on September 11, 2015, the defendants filed a request for leave to amend their answer to include certain special defenses. In the attached amended answer, the defendants asserted four special defenses, specifically, that (1) the plaintiff's claims were barred by the doctrine of governmental immunity pursuant to § 52-557n, (2) the plaintiff's claims for damages were barred by § 52-557n (b) (6),[12] (3) the plaintiff's complaint failed to state a claim upon which relief may be granted, and (4) the intervening and superseding acts and omissions of the other students caused the plaintiff's injuries. On September 25, 2015, the plaintiff filed an objection to that motion.
**14 At the conclusion of the trial, the defendants reminded the court that "there was an amended answer to the plaintiff's complaint, [dated] September 11, 2015, which the plaintiff objected to, but it was never resolved. And there [is] the [defense] of governmental immunity in our amended answer." The plaintiff responded that the motion was never decided by the court, so the original July 29, 2015 answer was the operative pleading. At that time, the trial court did not resolve the issue, but instead responded, "[a]ll right," and then proceeded to explain that it was reserving decision on an unrelated motion to dismiss filed by the defendants. Subsequently, the trial court issued a memorandum of decision concluding that the plaintiff had satisfied the imminent harm to identifiable persons exception to governmental immunity. That memorandum of decision does not, however, expressly address *539 the defendants' motion for permission to amend their answer to assert governmental immunity as a special defense, or the plaintiff's objection to that motion.
Although the trial court never expressly exercised its discretion in ruling on the defendants' request to amend their answer or the plaintiff's objection to that motion, based on a thorough review of the record and the memorandum of decision, we conclude that it implicitly granted the defendants' request to amend their answer and overruled the plaintiff's objection. See Community Collaborative of Bridgeport, Inc. v. Ganim , 241 Conn. 546, 560, 698 A.2d 245 (1997) (although trial court did not make explicit finding that plaintiff's board failed to ratify unilateral action of one of its members, that finding was implicit in trial court's dismissal of action for lack of standing); cf. Gonzales v. Langdon , 161 Conn. App. 497, 509, 128 A.3d 562 (2015) ("we should infer from the [trial] court's silence that it implicitly denied the plaintiff's request for leave to amend");
**15 Spencer v. Star Steel Structures, Inc. , 96 Conn. App. 142, 155, 900 A.2d 42 ("[w]e may construe the [trial] court's decision to grant the application [for a prejudgment remedy] as an implicit finding that the defendants were not prejudiced by the short delay in their receipt of notice of the hearing on the application"), cert. denied, 280 Conn. 914, 908 A.2d 539 (2006). The trial court's memorandum of decision treats the special defense of governmental immunity as the primary issue to be resolved in the present case. Nearly the entire decision is devoted to addressing governmental immunity and the exception for imminent harm to an identifiable person. Nowhere in the memorandum of decision does the trial court treat the matter as "simply a negligence case," as the plaintiff now attempts to characterize it. Accordingly, we disagree with the plaintiff's claim that the defendants never pleaded the special defense of governmental immunity, because the record demonstrates that the trial court granted-albeit implicitly-the defendants' motion for permission to amend their answer. Moreover, because the plaintiff does not argue that the trial court abused its discretion by granting the defendants' motion for permission to amend their answer,[13] we do **16 not disturb *540 the trial court's decision to allow the defendants to assert the special defense of governmental immunity.
The judgment is reversed as to counts one and two of the plaintiff's complaint and the case is remanded with direction to render judgment for the defendants on those counts; the judgment is affirmed in all other respects.
In this opinion ROGERS, C.J., and PALMER, McDONALD, D'AURIA and ESPINOSA, Js., concurred.

We note that the present action was commenced on behalf of Anthony Martinez by and through his mother, Luz Mercado, as next friend and parent, who was also listed as a plaintiff in her individual capacity. We further note that, during the pendency of the present appeal, the trial court granted a motion substituting Anthony Martinez' father, Jorge Martinez, as next friend. For the sake of simplicity, we hereinafter refer to Anthony Martinez as the plaintiff.

We note that, because the trial court rendered judgment in favor of Harries, he did not join the city and the board in filing the present appeal. See footnote 5 of this opinion. For the sake of simplicity, we hereinafter refer to the city and the board, collectively, as the defendants.

General Statutes § 52-557n (a) provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit .... (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law...."

The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The plaintiff also filed a cross appeal, claiming that the trial court improperly (1) awarded him only $35,000 in noneconomic damages, which was inadequate to compensate him for his permanent scarring and pain and suffering, and (2) rendered judgment in favor of the defendants on counts three, four, and five of the complaint, which he contends asserted an official capacity claim against Harries and derivative claims against the city and the board pursuant to General Statutes §§ 7-465 (a) and 10-235 (a). Because we conclude that the plaintiff has failed to satisfy the imminent harm to identifiable persons exception to governmental immunity, we need not address these claims. See Grady v. Somers , 294 Conn. 324, 338, 984 A.2d 684 (2009) ("[a] tort claimant seeking to establish the liability of a municipal employee or official arising out of the negligent performance of a discretionary act necessary for indemnification by the municipality under § 7-465 [a] must ... overcome the qualified immunity afforded to those employees or officials").

We note that the defendants also claim that the trial court's finding of fact that the students were still running when the plaintiff's injury occurred was clearly erroneous. Because we ultimately conclude that the plaintiff failed to satisfy the imminent harm to identifiable persons exception to governmental immunity, even under the facts as the trial court found them, we need not address this claim.

We note that, to the extent that the defendants argue that the plaintiff was not, in fact, a member of an identifiable class of foreseeable victims, we need not reach this claim given our ultimate conclusion that the plaintiff has failed to establish that the defendants' acts or omissions subjected him to imminent harm.

In clarifying the imminent harm standard, we concluded in Haynes that Burns v. Board of Education , supra, 228 Conn. at 640, 638 A.2d 1, "incorrectly held that a foreseeable harm may be deemed imminent if the condition that created the risk of harm was only temporary and the risk was significant and foreseeable. Our statement in Evon v. Andrews , [211 Conn. 501, 508, 559 A.2d 1131 (1989) ], that a harm is not imminent if it 'could have occurred at any future time or not at all' was not focused on the duration of the alleged dangerous condition, but on the magnitude of the risk that the condition created." (Emphasis in original.) Haynes v. Middletown , supra, 314 Conn. at 322, 101 A.3d 249 ; see id., at 323, 101 A.3d 249 ("[w]e therefore overrule Burns and [Purzycki v. Fairfield , 244 Conn. 101, 708 A.2d 937 (1998) ] to the extent that they adopted a different standard").

We note that the question of whether an imminent harm was apparent to a municipal defendant is an evolving area of the law. For example, we recently granted a petition for certification in Northrup v. Witkowski , 175 Conn. App. 223, 167 A.3d 443, cert. granted, 327 Conn. 971, 173 A.3d 392 (2017). In that case, the Appellate Court held that the plaintiffs had failed to prove the imminent harm prong of the exception because the risk of flooding, due to the allegedly improper maintenance of a storm water drainage system, was not so great that there was a "clear and urgent need for action on the part of the [municipal] defendants." Id., at 244-45, 167 A.3d 443. Similarly, in Washburne v. Madison , 175 Conn. App. 613, 630, 167 A.3d 1029 (2017), petition for cert. filed (Conn. September 5, 2017) (No. 170201), the Appellate Court concluded that the plaintiff "presented no evidence that ... the defendants were aware that an injury similar to the one suffered by [the plaintiff, namely, a broken leg while playing soccer,] was so likely to happen that they should have acted to prevent it ...."

We note that the parties disagree about what constituted the dangerous condition in this case. The plaintiff asserts that the dangerous condition was students running with scissors. The defendants, on the other hand, contend that the trial court did not "identify the dangerous condition that caused the plaintiff's harm ...." Specifically, the defendants seem to argue that the students had stopped running before the scissors fell, and, therefore, "the running and the scissors had no connection with the plaintiff's injury ...." For its part, the trial court's memorandum of decision provides little insight into what it considered the dangerous condition. It noted: "[One of the female students] had safety scissors in her hand as she chased after [the plaintiff's friend]. As they approached the area where [the plaintiff] was in the auditorium, the scissors fell to the ground.... In picking up the scissors, [the other female student] cut the plaintiff ...." Regardless of whether the dangerous condition was students running with safety scissors or simply the presence of the safety scissors, however, the plaintiff has not identified any facts in the record that would have made it apparent to the defendants that this type of harm was imminent in the present case.

We emphasize that the plaintiff was not required to prove actual knowledge on the part of the defendants. "[T]he applicable test for the apparentness prong of the identifiable person-imminent harm exception is an objective one, pursuant to which we consider the information available to the [school official] at the time of [his or] her discretionary act or omission.... Under that standard, [w]e do not ask whether the [school official] actually knew that harm was imminent but, rather, whether the circumstances would have made it apparent to a reasonable [school official] that harm was imminent." (Citation omitted; internal quotation marks omitted.) Strycharz v. Cady , supra, 323 Conn. at 589, 148 A.3d 1011.

General Statutes § 52-557n (b) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from ... (6) the act or omission of someone other than an employee, officer or agent of the political subdivision ...."

We note, however, that it appears from the face of the record that the trial court did not abuse its discretion by granting the defendants' motion for permission to amend their answer. Whether to allow a party to amend the pleadings under Practice Book § 10-60 (a) rests within the discretion of the trial court. See, e.g., Motzer v. Haberli , 300 Conn. 733, 747, 15 A.3d 1084 (2011) ; GMAC Mortgage, LLC v. Ford , 144 Conn. App. 165, 184, 73 A.3d 742 (2013) ; see also Briere v. Greater Hartford Orthopedic Group, P.C. , 325 Conn. 198, 206 n.8, 157 A.3d 70 (2017) (stating that relation back inquiry presents question of law, but "once the trial court finds that a pleading relates back, its decision whether to allow an amendment is subject to an abuse of discretion standard of review"). "Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment.... Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion." (Internal quotation marks omitted.) Rizzuto v. Davidson Ladders, Inc. , 280 Conn. 225, 255, 905 A.2d 1165 (2006). Considering these factors, we observe that the defendants filed their request for permission to amend their answer on September 11, 2015, almost two months prior to the start of trial. Additionally, throughout the one day trial, both the plaintiff and the defendants focused on the issues of governmental immunity and the exception for imminent harm to an identifiable person. As such, there is no indication that allowing the amendment was unfair to the plaintiff. Accordingly, it appears that the trial court did not abuse its discretion by permitting the defendants to amend their answer.