******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALBERT BUEHLER *v.* TOWN OF NEWTOWN ET AL.
(AC 43087)

Prescott, Elgo and DiPentima, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, the town of Newtown and various school employees, for personal injuries he sustained when he fell from a referee stand while officiating a public high school volleyball match. The defendants filed a motion for summary judgment, arguing that they had shown that their allegedly negligent actions were discretionary, and thus they enjoyed governmental immunity, and that the plaintiff did not fall within the identifiable person-imminent harm exception to the governmental immunity doctrine. The trial court granted the defendants' motion for summary judgment, finding that the plaintiff, a volleyball referee, was not legally compelled to be on school premises at the time of his injury, and, accordingly, he was not an identifiable person to whom the identifiable person-imminent harm exception applied. On the plaintiff's appeal to this court, *held* that the trial court properly determined that no genuine issue of material fact existed as to whether the plaintiff was an identifiable victim who fell within the identifiable person-imminent harm exception to the governmental immunity doctrine: the only identifiable class of foreseeable victims that our Supreme Court has recognized is that of schoolchildren attending public schools during school hours, and an assignment to officiate a volleyball game after school hours is nothing like the legal compulsion imposed by our statutes that require a child's attendance at school; moreover, the plaintiff conceded that he had the option to accept or to deny the refereeing assignment, which made his presence on the premises voluntary; furthermore, it would have been improper to extend the identifiable victim classification, particularly because the student athletes participating in the volleyball game over which the plaintiff officiated would not themselves enjoy such a designation under existing law, and there was no doctrinal justification for treating the plaintiff differently than the schoolchildren.

Argued March 4—officially released August 3, 2021

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, brought to the Superior Court in the judicial district of Fairfield, where the court, *Welch, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Matthew D. Popilowski*, with whom, on the brief, was *Richard J. Tropiano, Jr.*, for the appellant (plaintiff).

*John A. Blazi*, for the appellees (named defendant et al.).

*Opinion*

PRESCOTT, J. This is a premises liability action brought by the plaintiff, Albert Buehler, against the defendants, the town of Newtown (town), the Newtown Board of Education (board), and Gregg Simon, the former athletic director of Newtown High School, arising out of injuries he sustained after he fell from a referee stand while officiating a volleyball match at Newtown High School.[1] The plaintiff appeals from the summary judgment rendered by the trial court in favor of the defendants on the ground that they are entitled to governmental immunity. The plaintiff claims that the court improperly rendered summary judgment in favor of the defendants because there is a genuine issue of material fact as to whether the plaintiff was an identifiable victim under the identifiable person-imminent harm exception to governmental immunity. We disagree and, therefore, affirm the judgment of the court.

The record before the court, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following relevant facts and procedural history. The plaintiff has worked as a volleyball referee for approximately forty years. The plaintiff received training and multiple national and state certifications in connection with his role as a referee. Further, the plaintiff was a member of the Connecticut Federation of Volleyball Officials. Although the position was part-time, the plaintiff frequently officiated matches on each day of a given week. The plaintiff regularly officiated college volleyball matches throughout the northeast, and high school volleyball matches in Connecticut and New York.

In order for its members to receive assignments for high school volleyball matches, the Connecticut Federation of Volleyball Officials utilized an online system called ArbiterSports. Referees, like the plaintiff, had access to ArbiterSports. Through the system, an assigner assigned referees to officiate specific matches, and the referees would receive notice of their match assignments via e-mail. The system assigned two referees to each match. A volleyball match properly could take place with one official, but such a situation was "unusual."[2] Under the rules of one of the governing agencies of high school volleyball, however, volleyball matches were not allowed to be played with no referee in attendance.

Upon receipt of notice of their match assignments, referees had the option to accept or reject the assignment. There was no rule that a referee must accept a referee assignment; however, referees generally needed to accept assignments if they wanted to continue receiving assignments in the future.

The plaintiff was assigned to officiate a girls volleyball match on September 25, 2015, at Newtown High

School. The match was arranged to take place in the school gymnasium, and one of the two assigned referees was expected to stand on an officiating stand in the gymnasium for the duration of the match to provide the referee with an elevated vantage point. The officiating stand was covered in padding and secured using a pin. There was no written policy concerning how the officiating stand was to be set up prior to girls volleyball matches. The student athletes routinely set up the officiating stand and the volleyball net prior to the arrival of the referees at the direction of the volleyball coach and/or athletic director. To set up the officiating stand, students were instructed to separate the two side rails of the ladder, rest the platform on top of the ladder, and secure the stand by inserting an attached pin. Simon, who ultimately was responsible for equipment setup in the school gymnasium, supervised setup prior to the volleyball match at issue.

Prior to the varsity match, a junior varsity match took place, and the plaintiff served as one of the two referees. During the junior varsity match, the other referee stood on the officiating stand. The plaintiff, however, stood on the officiating stand during the varsity match. Prior to the commencement of the varsity match, the plaintiff assured himself that the officiating stand had proper padding and was stable by "wiggl[ing] it . . . ." Subsequently, the plaintiff climbed onto the stand. Approximately one hour into the match, the officiating stand collapsed. The plaintiff fell approximately four to five feet and was injured.

In September, 2017, the plaintiff commenced this action, alleging that the defendants' negligent maintenance of the stand, failure to inspect and repair the stand, and failure to erect or maintain proper safeguards or warning signs, constituted a defective condition on the school premises that caused the injuries sustained by the plaintiff. The plaintiff further alleged that the defendants knew or, in the exercise of reasonable care, should have known about the defective stand.

In December, 2017, the defendants requested that the plaintiff revise several counts of his complaint to address, inter alia, the alleged basis of the town's and the board's liability. The defendants also requested that the plaintiff identify whether the individual defendants' actions were ministerial or discretionary.[3] In both requests, the defendants asserted that each defendant, either as a municipality or as an agent thereof, enjoyed qualified immunity from liability for the plaintiff's injuries.

The plaintiff filed a revised complaint on May 4, 2018, alleging, inter alia, that (1) the town and the board were liable to the plaintiff under General Statutes §§ 10-235,[4] 52-557n,[5] and 7-465;[6] and (2) the individual defendants were public officials whose conduct was likely to subject the plaintiff, an identifiable victim, to imminent

harm. The defendants filed an answer to the revised complaint and special defenses. By way of special defenses, the defendants asserted that, because the actions that each defendant took were discretionary in nature, each defendant was immune from liability.[7]

On October 30, 2018, the defendants filed a motion for summary judgment as to all six counts of the revised complaint, asserting that there were no genuine issues of material fact in dispute and the defendants were entitled to judgment as a matter of law. In support of their motion, the defendants submitted a memorandum of law, several affidavits, and excerpts from the plaintiff's deposition transcript.[8] The defendants argued that they had shown through their submissions that their allegedly negligent actions were discretionary, and thus they enjoyed governmental immunity unless the plaintiff fell within the narrow identifiable person-imminent harm exception to governmental immunity recognized by our Supreme Court. The defendants further argued that the plaintiff was not an identifiable victim, because the plaintiff voluntarily attended the volleyball match at which he was injured.[9] The defendants asserted that, because there was no question of fact that the plaintiff did not fall within the narrow identifiable person-imminent harm exception, the plaintiff could not prevent the application of governmental immunity, and the trial court was required to grant summary judgment in their favor.

In response, the plaintiff objected to the defendants' motion for summary judgment[10] in December, 2018, and, in support, submitted excerpts from Simon's and Czaplinski's depositions as well as a copy of board policies concerning the qualifications and duties of the athletic director for the school. The plaintiff argued that genuine issues of material fact existed as to whether (1) the plaintiff was, in fact, an identifiable victim under the identifiable person-imminent harm exception to governmental immunity, (2) the plaintiff was subject to imminent harm under the identifiable person-imminent harm exception to governmental immunity, and (3) the remaining defendants' duties were ministerial, not discretionary. The remaining defendants reiterated their arguments in a reply to the plaintiff's objection.

On December 14, 2018, the plaintiff filed a request for leave to amend the revised complaint, which was granted on January 10, 2019, over the objection of the defendants. The plaintiff amended counts one, two, and five against the town, the board, and Simon, respectively, by removing certain language concerning reasonableness and adding references to the board policy concerning the qualifications and duties of the athletic director for the school. The defendants filed a supplemental motion for summary judgment, noting that no further argument was necessary because they had already addressed all relevant issues in their original

motion for summary judgment. The trial court heard argument on the motion for summary judgment on February 25, 2019.

The trial court, *Welch, J.*, granted the defendants' motion for summary judgment. The trial court determined preliminarily that, because the defendants' actions were discretionary, rather than ministerial, they were immune from liability unless the plaintiff fell within the identifiable person-imminent harm exception to the governmental immunity doctrine. A party is an identifiable victim, the trial court explained, when that person is compelled to be somewhere, outside of limited circumstances. Thus, the trial court noted that the class of identifiable persons to which the exception is generally applicable is usually limited to students attending public schools during regular school hours because they are legally compelled to be on the school premises. The trial court determined that the plaintiff, a volleyball referee, was not legally compelled to be on the school premises at the time of his injury. Instead, his presence on the premises was voluntary. Accordingly, he was not an identifiable person to whom the identifiable person-imminent harm exception applied.[11] This appeal followed.

On appeal, the plaintiff challenges the trial court's decision to grant summary judgment in favor of the town, the board, and Simon. The plaintiff claims that the trial court improperly determined that no genuine issue of material fact existed as to whether he was an identifiable victim and, accordingly, he fell within the identifiable person-imminent harm exception to the governmental immunity doctrine. We are not persuaded.

We begin by setting forth the applicable standard of review. "This court's standard of review for a motion for summary judgment is well established. Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine

whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Kusy* v. *Norwich*, 192 Conn. App. 171, 175–76, 217 A.3d 31, cert. denied, 333 Conn. 931, 218 A.3d 71 (2019).

"The law pertaining to municipal immunity is similarly well settled. [General Statutes §] 52-557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages. . . . One such circumstance is a negligent act or omission of a municipal officer acting within the scope of his or her employment or official duties. . . . [Section] 52-557n (a) (2) (B), however, explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions [that] require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Internal quotation marks omitted.) *Ventura* v. *East Haven*, 330 Conn. 613, 629, 199 A.3d 1 (2019). "Accordingly, a municipality is entitled to immunity for discretionary acts performed by municipal officers or employees . . . ." *Kusy* v. *Norwich,* supra, 192 Conn. App. 177.

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." (Internal quotation marks omitted.) *Borelli* v. *Renaldi*, 336 Conn. 1, 10–11, 243 A.3d 1064 (2020).

Our Supreme Court "has recognized an exception to discretionary act immunity that allows for liability when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . This identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. . . . All three must be proven in order for the exception to apply. . . . [T]he ultimate determination of whether [governmental] immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues . . . properly left

to the jury." (Citation omitted; internal quotation marks omitted.) *Martinez* v. *New Haven,* 328 Conn. 1, 8, 176 A.3d 531 (2018). "[Our Supreme Court has] stated previously that this exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state." (Internal quotation marks omitted.) *Kusy* v. *Norwich,* supra, 192 Conn. App. 183. "The exception is applicable only in the clearest of cases." (Internal quotation marks omitted.) *Texidor* v. *Thibedeau,* 163 Conn. App. 847, 862, 137 A.3d 765, cert. denied, 321 Conn. 918, 136 A.3d 1276 (2016).

"An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm. . . . Although the identifiable person contemplated by the exception need not be a specific individual, the plaintiff must fall within a narrowly defined identified [class] of foreseeable victims." (Internal quotation marks omitted.) Id., 861–62. "[T]he question of whether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this exception to qualified immunity is ultimately a question of policy for the courts, in that it is in effect a question of duty. . . . This involves a mixture of policy considerations and evolving expectations of a maturing society . . . . [T]his exception applies not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims. . . . Our [Supreme Court's] decisions underscore, however, that whether the plaintiff was compelled to be at the location where the injury occurred remains a paramount consideration in determining whether the plaintiff was an identifiable person or member of a foreseeable class of victims." (Internal quotation marks omitted.) *Kusy* v. *Norwich,* supra, 192 Conn. App. 183; see also *Grady* v. *Somers,* 294 Conn. 324, 356, 984 A.2d 684 (2009) ("we have interpreted the identifiable person element narrowly as it pertains to an injured party's compulsion to be in the place at issue").

"Our courts have construed the compulsion to be somewhere requirement narrowly. . . . [T]his court [has previously] concluded that a plaintiff did not satisfy the requirement because [t]he plaintiff [did] not [cite] any statute, regulation or municipal ordinance that compelled her to drive her car on the stretch of [the] [s]treet where [an] accident occurred . . . [and] [did] not [show] that her decision to take [the] particular route was anything but a voluntary decision that was made as a matter of convenience. . . . [O]ur Supreme Court [has] determined that a person is not an identifiable victim if he is not legally required to be somewhere and could have assigned someone else to go to the location to complete the task in his place. . . . In *Grady* [v. *Somers,* supra, 294 Conn. 355–56], the municipality did not provide refuse pickup service, and residents could either obtain a transfer station permit and discard their

own refuse, or hire private trash haulers to come to their home. . . . Because the plaintiff . . . had the option of hiring an independent contractor to dispose of his refuse, the court did not classify him as an identifiable victim for injuries he sustained when he slipped on an ice patch at the transfer station." (Citations omitted; internal quotation marks omitted.) *Kusy* v. *Norwich*, supra, 192 Conn. App. 185–86 n.7.

Our Supreme Court has noted that "[t]he only identifiable class of foreseeable victims that [the court has] recognized . . . is that of schoolchildren attending public schools during school hours . . . ." (Internal quotation marks omitted.) Id., 183–84;[12] see, e.g., *Cotto* v. *Board of Education*, 294 Conn. 265, 267–68, 984 A.2d 58 (2009) (program director for summer youth program who slipped and fell on school premises was not considered identifiable class member); *Durrant* v. *Board of Education*, 284 Conn. 91, 107–108, 931 A.2d 859 (2007) (mother who slipped and fell picking up child from optional after school day care was not considered identifiable class member); *Prescott* v. *Meriden*, 273 Conn. 759, 761–62, 766, 873 A.2d 175 (2005) (parent who fell while voluntarily attending high school football game to watch child was not considered identifiable class member); *Costa* v. *Board of Education*, 175 Conn. App. 402, 409, 167 A.3d 1152 (student voluntarily attending school picnic who was injured while voluntarily playing basketball game was not considered identifiable class member), cert. denied, 327 Conn. 961, 172 A.3d 801 (2017). "Students attending public school during school hours are afforded this special designation as identifiable victims because they were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they [are] legally required to attend school rather than being there voluntarily; their parents [are] thus statutorily required to relinquish their custody to those officials during those hours; and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions." (Internal quotation marks omitted.) *Kusy* v. *Norwich*, supra, 192 Conn. App. 184–85. Accordingly, this court has consistently held that students who are injured outside of school hours do not fall within the class of identifiable victims under the identifiable victim-imminent harm exception. See *Marvin* v. *Board of Education*, 191 Conn. App. 169, 184, 213 A.3d 1155 (2019) (student athlete injured in locker room after school hours was not considered identifiable class member); *Jahn* v. *Board of Education*, 152 Conn. App. 652, 668–69, 99 A.3d 1230 (2014) (student athlete injured during swim practice was not considered identifiable class member).

In *Kusy* v. *Norwich*, supra, 192 Conn. App. 185–87, this court determined that a plaintiff did not fall within the identifiable class of foreseeable victims to invoke the identifiable person-imminent harm exception, even when the plaintiff's existence on the premises was

required by his employer to complete a work-related task. The plaintiff in *Kusy*, a deliveryman, delivered milk to a local middle school as part of his employment duties. Id., 173. On one morning, he notified his employer that he noticed snow and ice on the premises, but his employer "ordered him to complete the delivery." Id. The plaintiff slipped on the ice and fell on the premises. Id.

This court upheld the trial court's granting of summary judgment in favor of the defendants, the city, the board of education, and city employees. Id., 187. "[U]nlike schoolchildren, the plaintiff was not required by law to be on school grounds. A contractual duty to deliver milk at the school falls far short of the legal compulsion imposed by our statutes that require a child's attendance at school." Id., 185. Further, the plaintiff's employer could "meet its contractual obligation to deliver milk to the school by waiting or returning at a later time" after the ice had been removed from the premises. Id. Importantly, this court noted that "our courts have not treated other classes of individuals, apart from schoolchildren, who are present on school grounds during school hours as identifiable victims because there is always an aspect of voluntariness to their presence on school grounds. . . . [E]ven when schoolchildren are on school grounds, our courts have not classified them as identifiable victims if they are on school property as part of voluntary activities." (Citations omitted; footnote omitted.) Id., 186–87. Thus, this court determined that the plaintiff failed to raise a genuine issue of material fact as to whether the defendants were entitled to governmental immunity, and it "decline[d] to extend the classes of individuals who may be identifiable victims beyond the narrow confines of children who are statutorily compelled to be on school grounds during regular school hours." Id., 187.

In the present case, the plaintiff claims that he is an identifiable victim because he was compelled to be on the premises at the time of his injury. The plaintiff claims that, as a sports official, he was compelled to be on the premises and, without his presence, the volleyball match would not be permitted to go forward.[13] Essentially, the plaintiff asks us to extend the identifiable victim classification to encompass a plaintiff who is present on municipal property to officiate a voluntary activity outside of school hours. We decline to do so for the following reasons.

Just as in *Kusy*, "unlike schoolchildren, the plaintiff [in this case] was not required by law to be on school grounds." Id., 185. An assignment to officiate a volleyball game after school hours is nothing like the legal compulsion imposed by our statutes that require a child's attendance at school. Id. Moreover, the plaintiff conceded that he had the option to accept or to deny the assignment. The plaintiff's presence on the premises,

therefore, was voluntary. The possibility that, had he denied this, or other, officiating assignments, the plaintiff might have received fewer future assignments, does not render his presence on the premises involuntary, and certainly does not give rise to the same degree of legal compulsion necessary to fall within the immunity exception.

It would be improper for this court to extend the identifiable victim classification in this case, particularly because the student athletes participating in the volleyball game over which the plaintiff officiated would not themselves enjoy such a designation under existing law. See, e.g., *Marvin* v. *Board of Education*, supra, 191 Conn. App. 180–184; *Jahn* v. *Board of Education*, supra, 152 Conn. App. 668–69. In other words, if one of the student athletes had fallen from the officiating stand and sustained injuries, the defendants would enjoy governmental immunity from a premises liability claim initiated by the student. There is no doctrinal justification for treating the plaintiff differently than the schoolchildren.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff named six defendants in this action: (1) the town; (2) the board; (3) Joseph V. Erardi, Jr., the former superintendent of Newtown public schools, and his agents; (4) Lorrie Rodrigue, the principal of Newtown High School, and her agents; (5) Simon and his agents; and (6) Tom Czaplinski, the coach of the Newtown High School girls volleyball team. In his objection to a joint motion for summary judgment filed by the defendants, the plaintiff stated that he did not object to the court rendering summary judgment as to his claims against Erardi, Rodrigue, and Czaplinski, as set forth in counts three, four, and six of the operative amended complaint. The plaintiff also consented to the court rendering summary judgment on the plaintiff's claims for indemnification against Erardi, Rodrigue, and Czaplinski. The trial court confirmed on the record that "the plaintiff ha[d] no objection" to summary judgment being entered as to all claims against Erardi, Rodrigue, and Czaplinski. Erardi, Rodrigue, and Czaplinski have not participated in this appeal. Accordingly, we refer to the participating defendants—the town, the board, and Simon—individually by name and collectively as the defendants.

[2] In his deposition, the plaintiff was asked whether "a volleyball match [with] only one official" previously had taken place, and the plaintiff responded, "[s]ometimes." The plaintiff clarified that such a situation was "unusual," and offered that, if available officiating staff was limited, a match could take place with one referee.

[3] The defendants also requested that the plaintiff revise his complaint to clarify whether the plaintiff was an employee or nonemployee of the town or board at the time of the alleged injury. The plaintiff revised its complaint to characterize himself as "an invitee, customer, patron, and/or guest" and to remove language that characterized him as an "employee" of the town or board.

[4] General Statutes § 10-235 (a) provides in relevant part: "Each board of education shall protect and save harmless any . . . employee thereof or any member of its supervisory or administrative staff . . . from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason of alleged negligence or other act resulting in accidental bodily injury to . . . any person . . . provided such . . . employee, at the time of the acts resulting in such injury . . . was acting in the discharge of his or her duties or within the scope of employment or under the direction of such board of education . . . ."

[5] General Statutes § 52-557n (a) provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or

omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.”

[6] General Statutes § 7-465 (a) provides in relevant part: “Any town, city or borough, notwithstanding any inconsistent provision of law . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for . . . physical damages to person . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . . Governmental immunity shall not be a defense in any action brought under this section. . . .”

[7] “A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment [or discretion] upon the propriety of the act being done. . . . In contrast, when an official has a general duty to perform a certain act, but there is no city charter provision, ordinance, regulation, rule, policy, or any other directive [requiring the government official to act in a] prescribed manner, the duty is deemed discretionary.” (Citations omitted; footnote omitted; internal quotation marks omitted.) *Northrup* v. *Witkowski*, 332 Conn. 158, 169–70, 210 A.3d 29 (2019).

[8] On February 25, 2019, the defendants submitted a substitute exhibit to be considered with their motion for summary judgment, which included additional pages of the plaintiff’s deposition transcript that the defendants erroneously omitted from their memorandum in support of their motion for summary judgment.

[9] The defendants argued, in the alternative, that the plaintiff did not fall within the identifiable person-imminent harm exception because the harm he suffered was not sufficiently imminent. The defendants also argued that § 10-235 did not create a cause of action that a plaintiff could bring against the board. Rather, the defendants argued that the statute provided a medium through which employees or members of the board could receive indemnity from the board if a judgment were rendered against them.

[10] As previously mentioned, in his objection, the plaintiff stated that he did not object to summary judgment with respect to his claims against Erardi, Rodrigue, and Czaplinski, found in counts three, four, and six of the plaintiff’s revised complaint respectively. See footnote one of this opinion.

[11] The trial court also considered whether the town and the board were liable under §§ 10-235 and 7-465. The court determined that the defendants were entitled to summary judgment because § 10-235 did not provide the plaintiff with a cause of action against a board of education, and relief under § 7-465 was only available if governmental immunity did not bar recovery.

The plaintiff does not raise any claim on appeal regarding the trial court’s conclusions that the defendants’ actions were discretionary, rather than ministerial, or that § 10-235 did not provide for a cause of action against the board. Accordingly, these issues are not properly before us.

[12] In his appellate brief, the plaintiff relies on *Tryon* v. *North Branford*, 58 Conn. App. 702, 755 A.2d 317 (2000), to support his assertion that he is indeed an identifiable victim and that we must give weight to whether the plaintiff’s harm “occurred within a limited temporal and geographical zone” in our analysis. As this court noted in *Kusy*, “*Tryon* . . . was decided [more than twenty] years ago, and our Supreme Court has more recently focused its analysis regarding whether a plaintiff is an identifiable victim on whether the plaintiff is compelled to be somewhere. See *St. Pierre* v. *Plainfield*, 326 Conn. [420, 436–37, 165 A.3d 148 (2017)]. The court has, therefore, not extended the classes of identifiable victims beyond schoolchildren who are statutorily required to attend school during school hours.” *Kusy* v. *Norwich*, supra, 192 Conn. App. 186 n.8.

[13] The plaintiff claims that “two referees were required in order for the volleyball match to go forward and be officially sanctioned.” Upon review of the record, even in the light most favorable to the plaintiff, we cannot come to the same conclusion. When asked in his deposition whether a

volleyball match could proceed with "no referees," Czaplinski answered, "[t]he match would not go forward without an official." Simon, when asked in his deposition whether the high school governing agency could sanction a match as official without having *any* certified referee, answered, "[n]o," and explained that he could not "remember" whether the local league required two referees for a volleyball match to be held. Finally, the plaintiff admitted in his deposition:

"Q. Is there ever a volleyball match where there is only one official?

"A. Sometimes."

[14] At least three members of our Supreme Court recently have observed that the court's application of the identifiable person-imminent harm exception, particularly with respect to the identifiable person prong of the exception, may be doctrinally flawed, unduly restrictive, and/or ripe for revisiting in an appropriate future case. See *Borelli* v. *Renaldi*, supra, 336 Conn. 35, 59–60 n.20 (*Robinson*, *C. J.*, concurring); id., 67 (*D'Auria*, *J.*, concurring); id., 67–113, 146–54 (*Ecker*, *J.*, dissenting). Nevertheless, this court is required to follow binding Supreme Court precedent unless and until our Supreme Court sees fit to alter it. See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that [our Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [Supreme Court] precedent").

---